IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

Civil Action No.:

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

STATE OF NEW MEXICO,
DEPARTMENT OF CORRECTIONS,

    Defendant.

**COMPLAINT AND JURY TRIAL DEMAND**

**NATURE OF THE ACTION**

This is an action under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, et seq. ("ADEA"), to correct unlawful employment practices on the basis of age and retaliation for engaging in protected activity in violation of the ADEA. This is an action to provide appropriate relief to Richard Henderson, Robert Tenorio, Paul Martinez, and other aggrieved individuals who worked for Defendant in the State of New Mexico and who suffered discrimination because of age. As alleged with greater particularity below, Henderson and Tenorio were denied hire and/or promotions, were discriminated against with respect to job assignments and compensation, and were unfairly disciplined or discharged because of their age and/or their opposition to unlawful employment practices and/or participation in proceedings under the ADEA. Also, other individuals, age forty or over, were denied employment

opportunities and/or subjected to discrimination in job assignment and other terms, conditions, or privileges of employment because of their age.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 7(b) of the ADEA, *as amended*, 29 U.S.C. § 626(b) which incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), *as amended*, 29 U.S.C. §§ 216(c) and 217.

2. The employment practices alleged to be unlawful in this action were committed within the jurisdiction of the United States District Court for the District of New Mexico.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of the ADEA and is expressly authorized to bring this action by Section 7(b) of the ADEA, 29 U.S.C. § 626(b), as amended by Section 2 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and by Public Law 98-532 (1984), 98 Stat. 2705.

4. At all relevant times, Defendant, State of New Mexico, Department of Corrections (the "Defendant" or the "Corrections Department"), has continuously been an agency or instrumentality of the State of New Mexico, and has continuously had at least 20 employees.

5. At all relevant times, Defendant has continuously been an employer within the

meaning of Section 11(b) of the ADEA, 29 U.S.C. §§ 630(b).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Richard Henderson, Robert Tenorio, and Paul Martinez filed charges of discrimination with the Commission, alleging violations of the ADEA by Defendant.

7. The EEOC provided Defendant with notice of the charges of discrimination.

8. EEOC investigated the charges of discrimination.

9. Based on evidence uncovered during the EEOC's investigation, EEOC issued letters of determination to Defendant finding reasonable cause to believe that Defendant had engaged in unlawful employment practices prohibited by the ADEA.

10. The Commission's determinations included an invitation for Defendant to join the Commission in informal methods of conference, conciliation, and persuasion within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b), in an attempt to eliminate and remedy the alleged unlawful employment practices.

11. Defendant responded to EEOC's conciliation invitations by advising EEOC that Defendant was not interested in conciliation.

12. The Commission and Defendant were unable to reach an agreement acceptable to the Commission through the conciliation process.

13. The Commission sent notice to Defendant that conciliation had failed.

14. All conditions precedent to the institution of this lawsuit have been fulfilled.

## GENERAL ALLEGATIONS

*Richard Henderson*

15. Richard Henderson was employed by the Corrections Department from September 27, 1993 to August, 2014.

16. Henderson's career at the Corrections Department included several promotions, including promotions to the levels of Sergeant, Lieutenant and Captain.

17. Henderson received consistently excellent or good evaluations of his performance over his twenty-one year career with the Corrections Department.

18. Henderson's reputation among supervisory and non-supervisory personnel at CNMCF was that he was an outstanding or excellent employee with exceptional work ethic, abilities and experience.

19. In July 2010, Henderson held the rank of Captain and the position of Investigator in the Security Threat Intelligence Unit at the Central New Mexico Correctional Facility ("CNMCF") in Los Lunas, New Mexico.

20. In July 2010, Henderson was 49 years old.

21. In about July, 2010, Henderson and another employee, Jerry Martinez who was also over 40 years old, were among the applicants for a vacant Major position at CNMCF.

22. Henderson and Martinez were both interviewed for the position by an interview panel at CNMCF.

23. Then-Warden Anthony Romero made the final selection decision from the list of the top three qualified candidates referred to him.

24. After Henderson had been interviewed, Warden Romero met individually with Henderson on July 13, 2010, to inform him of his non-selection for the Major position at

CNMCF.

25.  During the July 13, 2010, meeting with Henderson, Warden Romero explained that while Henderson was qualified for promotion to the Major position, Warden Romero was looking for someone with "longevity." Warden Romero then informed Henderson that he had selected a 31 year-old candidate.

26.  After Jerry Martinez had been interviewed, Warden Romero met individually with Martinez to inform him of his non-selection for the Major position at CNMCF.

27.  During the meeting with Jerry Martinez, Warden Romero explained that while Martinez was qualified for promotion to the Major position, Warden Romero was looking for someone with "longevity." Warden Romero then informed Martinez that he had selected a 31 year-old candidate.

28.  The 31 year-old candidate selected by Warden Romero was not as qualified as Henderson or Jerry Martinez.

29.  On July 16, 2010, after Henderson learned that he was denied promotion in favor of a much younger, less qualified candidate, Henderson filed internal complaints of age discrimination with his employer, NMCD.

30.  On July 22, 2010, less than a week after Henderson complained of age discrimination, Warden Romero directed Deputy Warden Robert Tenorio to investigate Richard Henderson and find policy or procedure violations by Henderson for allegedly failing to properly notify the Warden of undue familiarity between an inmate and a corrections employee. Tenorio informed Henderson that the investigation could lead to disciplinary action. Henderson informed Tenorio that Henderson believed the Warden's

actions were age discrimination and retaliation.

31. On July 23, 2010, after his meeting with Tenorio, Henderson filed his second internal complaint with the Corrections Department's EEO Officer Vivian Smith. Henderson complained that the internal investigation being conducted by Tenorio was retaliation for Henderson's internal age discrimination complaint.

32. Tenorio conducted an investigation and concluded, based on the facts he had discovered in the investigation, that Henderson had committed no violations.

33. On August 27, 2010, Richard Henderson filed charges of age discrimination with the EEOC.

34. In about May, 2011, Richard Henderson, then age 50, was involuntarily reassigned out of the Security Threat Intelligence Unit ("STIU"), where he had worked for two years as an Investigations Captain responsible for major investigations at the CNMCF facility, intelligence gathering functions, and safety and sanitation inspections..

35. Over the years Henderson was in STIU, he obtained specialized training and experience in security threat intelligence matters.

36. Henderson performed successfully throughout the time he was in STIU.

37. In May 2011, Henderson was reassigned to be responsible for four different units in CNMCF: the Mental Health Unit, the Long-Term Care Unit, the Geriatric Unit, and the Kitchen.

38. The four units assigned to Henderson were previously managed by at least three employees. Henderson was expected to manage these four different units alone without the management assistance of other employees.

39. At CNMCF, when Henderson was a Lieutenant he only had limited non-managerial work assignments/experience in the area of Mental Health Unit, Long-Term Care Unit, Geriatric Unit, and the Kitchen. Before May, 2011, Henderson had never worked in these Units without assistance of other Lieutenants and a supervising Captain.

40. The involuntary reassignment in May, 2011 to these Units was designed to set Henderson up for failure.

41. Henderson was involuntarily reassigned because of his age and/or his filing of internal EEO complaints and an EEOC Charge.

42. After Warden Romero transferred to the Santa Fe Corrections' facility, in June or July 2011, the Acting Warden, Joe Garcia, reassigned Henderson back to his Captain's post in the STIU.

43. Henderson remained at CNMCF until he felt compelled to retire in August, 2014.

*Robert Tenorio*

44. Robert Tenorio was employed by the Corrections Department from at least June, 1995 to September, 2012.

45. Tenorio's long term career at the Corrections Department included several promotions, including promotions to the positions of Staff Development Specialist, Classifications Officer, Administrative Law Judge, Quality Assurance Manager and Deputy Warden. Tenorio received consistently excellent or good evaluations of his performance over his tenure with the Corrections Department. Tenorio's first negative

evaluation did not occur until 2010 at the hands of Warden Romero because of Tenorio's age and in retaliation for his opposition to discrimination and retaliation at the Corrections Department. Prior to 2010, Tenorio only had one disciplinary action in his record.

46. As of July, 2010, Tenorio, was 53 years old and held the position of Deputy Warden at CNMCF.

47. On or about July 22, 2010, Warden Romero instructed Tenorio to conduct an investigation, and find that Richard Henderson had violated Corrections Department policy or procedure for allegedly failing to properly notify the Warden of allegations of undue familiarity between an inmate and a corrections employee.

48. Tenorio conducted an investigation, but found that Henderson had not violated the policy or procedures applicable at CNMCF.

49. On July 28, 2010, Tenorio provided Warden Romero his written investigatory report finding that Henderson did not violate policies or procedures applicable at CNMCF regarding notice to the Warden of allegations of undue familiarity between an inmate and a corrections employee.

50. After receiving Tenorio's written report regarding Henderson, Warden Romero repeatedly demanded that Tenorio change his report to find violations by Henderson. Tenorio refused these demands.

51. After Tenorio submitted his report to Warden Romero regarding the lack of policy or procedure violations by Henderson, Tenorio received a Letter of Direction dated August 17, 2010 from Warden Romero. This Letter of Direction accused Tenorio

of alleged infractions, including:

    a) Defending a maintenance worker who had allegedly received complaints from co-workers;

    b) Failing to immediately report broken equipment in Tenorio's work area; and

    c) Failing to correct complaints made against a visiting officer, which were escalated to the Warden's office.

However, these alleged infractions had either been addressed by Tenorio or were matters that required equipment or staff to complete the task.

52. On or about August, 18, 2010, Richard Henderson formally advised the Corrections Department EEO officer that Robert Tenorio was a witness in the matter of Henderson's complaints of discrimination.

53. After Tenorio submitted his report regarding Henderson and after Tenorio was identified as a witness for Henderson's internal EEO complaint, Robert Tenorio was subjected to various adverse actions, including but not limited to:

    a) Unwarranted and false accusations of time sheet fraud and performance deficiencies, letters of direction or reprimand, including a Letter of Reprimand dated December 6, 2010, and requests for additional discipline of Tenorio by Warden Romero to Human Resources;

    b) Unwarranted and out of routine cycle performance evaluations with "needs improvement" assessments and negative comments in September, 2010;

    c) Unwarranted and negative performance evaluation finding Tenorio "Does Not Achieve Performance Standards" in December, 2010;

    d)   Unwarranted placement on a Work Improvement Plan (WIP) on December 10, 2010;

    e)   Unwarranted reassignment of duties or post;

    f)   Unwarranted investigations and threats of discipline;

    g)   Unwarranted discipline, including a 1 day suspension on about June, 2011;

    h)   Denial of promotions in 2011 and 2012; and

    i)   Discharge effective September 21, 2012.

54. Beginning in August, 2010, Tenorio was repeatedly pressed by Warden Romero to provide a letter indicating his anticipated date for Tenorio's retirement.

55. On September, 24, 2010, an Internal Affairs investigation of Tenorio's alleged timecard falsification was completed. The Internal Affairs investigation "clearly established that the allegation is not true."

56. Current and former supervisory officials and non-supervisory employees of CNMCF assert that Tenorio was a good, hard-working employee who did not commit the performance deficiencies or policy violations Warden Romero constantly accused him of.

57. The gauntlet of proposed discipline, discipline, and negative performance evaluations that Tenorio was subjected to at CNMCF was not for legitimate reasons and was unlawfully based on his age and/or his opposition to unlawful employment practices and/or participation in proceedings under the ADEA.

58. In November 2010 and June 2011, Tenorio filed charges of age discrimination and retaliation with the New Mexico Human Rights Division and the EEOC.

59. On or about May, 2011, Robert Tenorio was interviewed by the EEOC as part of EEOC's investigation of Henderson's Charge.

60. Beginning in at least August, 2011, Tenorio applied for several promotions to the position of Warden in several Corrections Department facilities in New Mexico.

61. Although Tenorio was well qualified for promotion, he was not selected and younger, less qualified individuals were selected.

62. Robert Tenorio, age 55, was discharged in September, 2012 for alleged policy violations, including alleged undue familiarity with an inmate, conflict of interest, and refusal to submit to a polygraph.

63. The allegations of undue familiarity with an inmate and conflict of interest were not substantiated and/or do not justify discharge of Tenorio.

64. The allegation of refusal to submit to a polygraph is not true as Tenorio, upon advice of counsel, simply asked that the polygraph reflect that he was submitting to the polygraph involuntarily, under threat of termination, and did not waive any rights.

65. Tenorio's discharge was not for legitimate reasons and was unlawfully based on his age and/or his opposition to unlawful employment practices and/or participation in proceedings under the ADEA.

***Other Aggrieved Individuals***

66. From at least January, 2009 through at least December, 2014, Defendant has denied employment opportunities to older workers based on their age, age 40 and over.

67. Many of the decisions to deny employment opportunities to older workers were made by then Warden Anthony Romero, age 38.

68. Warden Romero made ageist comments, such as:

   a) Stating his emphasis on "longevity" in promotion decisions – that is, selecting younger employees likely to stay longer in the new position;

   b) Stating his desire not to promote older workers or workers close to retirement; and

   c) Stating his preferences for younger employees over older employees.

69. Warden Romero instilled a culture of age discrimination that continues to be adopted and applied by the Corrections Department in job selection decisions and the agency's treatment of older workers.

70. Since at least 2009, and continuing, individuals age 40 and over, who applied for hire/promotion with the Corrections Department, were denied employment opportunities because of their age, over forty, in violation of the ADEA.

71. Paul Martinez was employed by the Corrections Department from August, 2006 to present.

72. Paul Martinez started his employment as a Correctional Officer and has been promoted to the rank of Lieutenant.

73. In 2013, when Lieutenant Paul Martinez was 58 years old, he sought assignment to the Security Threat Intelligence Unit, a job assignment that offered greater wage earning potential and enhanced opportunities for career advancement.

74. In July, 2013 and again in October, 2013, CNMCF selected for assignment to the Security Threat Intelligence Unit younger candidates who were less qualified than Paul Martinez.

75. From at least January, 2010, other employees age 40 or over, have been subjected to discriminatory terms, conditions, or privileges of employment because of their age, including but not limited to, unwarranted job reassignments, unwarranted discipline, and/or threats of unwarranted discipline.

## FIRST CLAIM FOR RELIEF
### [ADEA, 29 U.S.C. § 623(A)(1) – DENIAL OF EMPLOYMENT OPPORTUNITIES BECAUSE OF AGE]

76. The allegations contained in the preceding paragraphs are hereby incorporated.

77. Richard Henderson, Robert Tenorio, and other aggrieved individuals who were age forty or older, sought hire/promotion with the Corrections Department for positions which they were qualified to perform.

78. Beginning in at least 2009 and continuing through at least 2014, Defendant Corrections Department denied employment opportunities to Henderson, Tenorio, and other aggrieved individuals, age forty or over, who sought hire/promotion with the Corrections Department in New Mexico.

79. Defendant Corrections Department selected younger candidates who had lessqualifications, less relevant experience, and lesser performance records than Henderson, Tenorio, and other aggrieved individuals who sought hire/promotion with the Corrections Department in New Mexico.

80. The effect of the Defendant's practices complained of in the foregoing paragraphs has been to deprive Henderson, Tenorio, and other aggrieved individuals of employment opportunities, and otherwise adversely affect their status as applicants and employees because of their age, forty or over.

81. By its conduct complained of above, Defendant Corrections Department engaged in unlawful employment practices in violation of Section 4(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1), by denying employment opportunities to employees and/or applicants because of their age, forty or over.

82. The unlawful employment practices complained of in the foregoing paragraphs were and are willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

## SECOND CLAIM FOR RELIEF
### [ADEA, 29 U.S.C. § 623(A)(1) – DISCRIMINATION BASED ON AGE WITH RESPECT TO COMPENSATION, TERMS, CONDITIONS, OR PRIVILEGES OF EMPLOYMENT]

83. The allegations contained in the preceding paragraphs are hereby incorporated.

84. Since at least July, 2010 and continuing, Defendants have engaged in unlawful discriminatory employment practices in violation of Section 4(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1) by subjecting older workers to harassment and unwarranted employment actions because of their age.

85. Such harassment and unwarranted actions include without limitation, all of the following:

    a) Unwarranted investigations;

    b) Threats of unwarranted discipline;

    c) Unwarranted discipline;

    d) Job reassignment to less desirable duties;

    e) Denial of assignment to more favorable duties;

    f) Punitive relocation of offices;

    g) Heightened scrutiny of job performance;

      h)    Unwarranted negative performance evaluations; and

      i)    Unwarranted imposition of Work Improvement Plans.

86. In at least July, 2013, CNMCF was aware of Paul Martinez' request for reassignment as a Lieutenant in the Security Threat Intelligence Unit.

87. In July, 2013 and again in October, 2013, CNMCF selected for assignment to the Security Threat Intelligence Unit younger candidates who were less qualified than Paul Martinez.

88. CNMCF's non-selection of Paul Martinez for assignment to the Security Threat Intelligence Unit was discrimination in compensation, terms, conditions, or privileges of Martinez' employment because of his age.

89. The effect of the practices complained of in the foregoing paragraphs has been to subject Henderson, Tenorio, Paul Martinez and other employees age forty or older, to discrimination in compensation, terms, conditions, or privileges of their employment because of their age.

90. The age discriminatory employment practices described in the foregoing paragraphs deprived Henderson, Tenorio, Paul Martinez and other aggrieved individuals of equal employment opportunities, and otherwise adversely affected their status as employees because of their age, over forty.

91. The unlawful employment practices complained of above were and are willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

## THIRD CLAIM FOR RELIEF
## [ADEA, 29 U.S.C. § 623(A)(1) -- WRONGFUL DISCHARGE]

92. The allegations contained in the preceding paragraphs are hereby incorporated.

93. In September, 2012, Robert Tenorio was over age 40 when he was discharged.

94. There is no legitimate reason for Tenorio's discharge.

95. Tenorio was discharged because of his age and/or in retaliation for engaging in conduct protected under Section 4(d) of the ADEA, 29 U.S.C. §623(d), in violation of Sections 4(a)(1) and 4(d) of the ADEA, 29 U.S.C. §§ 623(a)(1)(2) and 623(d).

96. The effect of the practices complained of above in the foregoing paragraphs has been to discriminate against Robert Tenorio because of his age, over forty, or because of his protected conduct.

97. The unlawful employment practices complained of in the foregoing paragraphs were and are willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

## FOURTH CLAIM FOR RELIEF
### [ADEA, 29 U.S.C. §623(D) -- RETALIATION]

98. The allegations contained in the preceding paragraphs are hereby incorporated.

99. During their employment with the Corrections Department, Henderson, Tenorio, and other aggrieved individuals, engaged in protected activity under Section 4(d) of the ADEA, 29 U.S.C. §623(d), by opposing unlawful discriminatory and retaliatory employment practices at the Corrections Department, or filing charges of discrimination, or participating in investigation of a charge of discrimination.

100. The Corrections Department, acting through its managers and supervisors, retaliated against Henderson, Tenorio, and other aggrieved individuals, because of their protected activity, in violation of Section 4(d) of the ADEA, 29 U.S.C. § 623(d).

101. The effect of the retaliatory practices complained of above has been to

deprive Henderson, Tenorio, and other aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees because they made internal discrimination complaints, filed Charges of Discrimination, and/or testified, assisted, or participated in an investigation, proceeding or litigation under the ADEA.

102.   The unlawful employment practices complained of above were and are willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.   Grant a permanent injunction enjoining Defendant Corrections Department, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in discrimination because of age, including refusing to hire or promote individuals forty years of age or older; discriminating with respect to compensation, terms, conditions, or privileges of employment because individuals are forty years of age or older; and any employment practice which discriminates on the basis of age against individuals forty years of age or older.

B.   Grant a permanent injunction enjoining Defendant Corrections Department, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in any employment practice which retaliates against individuals who oppose perceived unlawful employment practices, and/or file Charges, and/or who participate in any proceedings under the ADEA.

      C.      Order Defendant Corrections Department to institute and carry out policies, practices and programs which provide equal employment opportunities for individuals forty (40) years of age and older, and which eradicate the effects of its past and present unlawful employment practices.

      D.      Order Defendant Corrections Department to institute and carry out policies, practices and programs which eradicate the effects of its past and present unlawful and retaliatory employment practices toward individuals who oppose perceived unlawful employment practices, and/or who file Charges, and/or who participate in any proceedings under the ADEA.

      E.      Grant a judgment requiring Defendant Corrections Department to pay appropriate back wages in an amount to be proved at trial, and an equal sum as liquidated damages, and prejudgment interest, to Richard Henderson, Robert Tenorio, Paul Martinez, and other aggrieved individuals adversely affected with respect to wages and/or benefits by the discriminatory conduct described above.

      F.      Order Defendant Corrections Department to make whole all the aggrieved individuals adversely affected by the unlawful employment practices described above, including Richard Henderson, Robert Tenorio, Paul Martinez, and other aggrieved individuals who suffered similar discriminatory employment decisions, by providing the affirmative relief necessary to eradicate the effects of its unlawful practices, including but not limited to rightful-place hiring or promotion, rightful-place job assignments, reinstatement with all attendant rights and benefits, and where appropriate frontpay.

      G.      Grant such further legal and equitable relief as the Court deems

necessary and proper based on the discriminatory conduct described above and in the public interest.

  H.  Award the Commission its costs in this action.

## JURY TRIAL DEMAND

  The Commission requests a jury trial on all questions of fact raised by its complaint.

  RESPECTFULLY SUBMITTED this 30th day of September, 2015.

        P. David Lopez
        General Counsel

        Gwendolyn Reams
        Associate General Counsel

        Mary Jo O'Neill
        Regional Attorney
        Phoenix District Office

        Rita Byrnes Kittle
        Supervisory Trial Attorney
        Denver Field Office

        */s/ Loretta Medina*
        Loretta Medina
        Senior Trial Attorney

        EQUAL EMPLOYMENT OPPORTUNITY
        COMMISSION
        Albuquerque Area Office
        505 Marquette N.W., Suite 900
        Albuquerque, New Mexico 87102
        (505) 248-5230
        loretta.medina_@eeoc.gov