**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

       Plaintiff,

v.                               Civ. No. 15-879 KG/KK

STATE OF NEW MEXICO,
CORRECTIONS DEPARTMENT,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendant New Mexico Corrections Department's Motion to Compel Plaintiff EEOC's Answers to Defendant's First, Second and Third Sets of Interrogatories and Defendant's Second and Third Sets of Requests for Production ("Motion to Compel Answers") (Doc. 78), filed May 20, 2016, and Defendant's Motion to Compel Continuation of Deposition of Robert Tenorio ("Motion to Compel Deposition") (Doc. 106), filed August 8, 2016. The Court, having reviewed the parties' submissions and the relevant law, and being otherwise fully advised, FINDS that the Motion to Compel Answers is not well taken and should be DENIED, and that the Motion to Compel Deposition is well taken in part and should be GRANTED IN PART and DENIED IN PART, as follows.

**I. Introduction and Procedural History**

In this action, Plaintiff the United States Equal Employment Opportunity Commission ("Plaintiff" or "EEOC") asserts claims against Defendant the State of New Mexico, Corrections Department ("Defendant" or "NMCD") under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* Plaintiff claims that Defendant discriminated against three

named aggrieved individuals, and an unspecified number of unnamed aggrieved individuals,[1] in the terms and conditions of their employment because of their age of forty years or older, and retaliated against these individuals for engaging in protected opposition to age discrimination, at Defendant's facilities throughout New Mexico from 2009 to the present.  (Doc. 42.)  Defendant denies Plaintiff's claims and asserts a number of affirmative defenses, including that Plaintiff "fail[ed] to appropriately engage in the conciliation process," and that the aggrieved individuals "fail[ed] to fully exhaust the administrative process."  (Doc. 46.)

Plaintiff filed this civil action on September 30, 2015, and filed an amended complaint on March 14, 2016, which Defendant answered on March 28, 2016.  (Docs. 1, 42, 46.)  On February 18, 2016, the Court entered an order adopting the phased discovery schedule the parties proposed in their Supplemental Joint Status Report and Proposed Discovery Plan.  (Docs. 25, 33.)  In Phase I, Plaintiff "will conduct discovery to identify additional aggrieved individuals; and, Defendant will conduct discovery regarding the adequacy of Plaintiff's pre-filing investigation and conciliation."  (*Id.* at 1.)  Each party may serve no more than twenty-five Phase I interrogatories.  (*Id.*)  In Phase II, "[b]oth parties will conduct discovery on the merits of Plaintiff's claims on behalf of the eighteen (18) currently identified aggrieved individuals."  (*Id.* at 2.)  Each party may serve no more than twenty-five Phase II interrogatories.  (*Id.*)  Phase I discovery will end on January 6, 2017, and Phase II discovery will end "no later than 120 days after EEOC answers NMCD's Third Set of Interrogatories."  (Doc. 120 at 1-2.)

---

[1] The three aggrieved individuals named in Plaintiff's original and amended complaints are Richard Henderson, Robert Tenorio, and Paul Martinez.  (*See generally* Docs. 1, 42.)  Plaintiff identified fifteen additional aggrieved individuals in the parties' Joint Status Report and Provisional Discovery Plan, specifically, Joe Alaniz, Richard Chiliellie, Theodore Gray, Donald Guy, Albert Herrera, Ben Lujan, Marilyn Lujan, Jerry Martinez, Gabriel Martinez, Jeri Moya, Beatrice Narcisco, Larry Phillips, Aubryn Rhoades, Conrad Romero, and Robert Trujillo. (Doc. 10-1 at 1.)  Plaintiff also maintains its right to identify other aggrieved individuals during discovery in this matter.  (Doc. 10 at 31; Doc. 25 at 1-4, 7-9.)

Defendant served a First Set of Interrogatories on Plaintiff on February 11, 2016, a Second Set of Interrogatories and Second and Third Sets of Requests for Production on February 24, 2016, and a Third Set of Interrogatories on March 3, 2016. (Docs. 27, 34-36.) Pursuant to agreed-upon extensions, Plaintiff objected to Defendant's First Set of Interrogatories on April 8, 2016 and to Defendant's Second and Third Sets of Interrogatories on April 14, 2016, and objected and responded to Defendant's Second and Third Sets of Requests for Production on April 18, 2016. (Doc. 78 at 3-5.) Plaintiff also served supplemental responses to Defendant's Second and Third Sets of Requests for Production on May 19, 2016. (Doc. 77.) Following an exchange of correspondence between counsel, on May 20, 2016, Defendant filed its Motion to Compel Answers, asking the Court to order Plaintiff to fully respond to the foregoing discovery requests. (Doc. 78.)

Defendant deposed Robert Tenorio, an identified aggrieved individual, on July 7, 2016, from 8:56 a.m. to 5:37 p.m. (Doc. 111-2 at 4:1, 292:22.[2]) Defendant subsequently asked Plaintiff to allow Defendant to depose Mr. Tenorio for three additional hours. (Doc. 111 at 3.) Plaintiff rejected this request, and proposed to make Mr. Tenorio available to be deposed for one and a half additional hours. (*Id.*) Defendant rejected Plaintiff's proposal and filed its Motion to Compel Deposition, asking the Court to compel Plaintiff to produce Mr. Tenorio to be deposed for three additional hours. (Doc. 106 at 8.) In the motion, Defendant also asks the Court to prohibit Mr. Tenorio's private counsel from making objections at the continued deposition. (*Id.*) Having meticulously reviewed the parties' submissions and the relevant law, the Court finds that Defendant's Motion to Compel Answers is not well taken and should be denied, and that

---

[2] Document 111-2 is the transcript of Mr. Tenorio's July 7, 2016 deposition, in four-to-a-page format. (Doc. 111-2.) For greater precision, the Court will cite to the transcript by transcript page and line number, rather than civil docket page number.

Defendant's Motion to Compel Deposition is well taken in part and should be granted in part and denied in part, as follows.

## II. Analysis

**A.      Defendant's Motion to Compel Answers**

**1.      Defendant's First, Second, and Third Sets of Interrogatories**

a.      <u>Plaintiff's Supernumerary Objection</u>

In its Motion to Compel Answers, Defendant asks the Court to compel Plaintiff to answer Defendant's First, Second, and Third Sets of Interrogatories.  (Doc. 78 at 7-25.)  Plaintiff objected to these interrogatories but did not answer them.  (Docs. 78-1 to 78-3.)  In so doing, Plaintiff relied on its objection that Defendant has served interrogatories in excess of the numerical limits for Phase I and II interrogatories, and on *Allahverdi v. Regents of University of New Mexico*, which holds that

> [w]hen a party believes that another party has asked too many interrogatories, the party to which the discovery has be[en] propounded should object to all interrogatories or file a motion for protective order.  The responding party should not answer some interrogatories and object to the ones to which it does not want to respond.  By answering some and not answering others, [a party waives] this objection.

228 F.R.D. 696, 698 (D.N.M. 2005); *see also Coyne v. Los Alamos Nat'l Sec., LLC*, Civ. No. 15-54 SCY/KBM, Mem. Op. & Order at 5 (D.N.M. Feb. 29, 2016) (by unilaterally assessing number of interrogatories and ceasing to answer after reaching numerical limit, defendant waived counting objection).

By its own count, Defendant propounded sixteen interrogatories in its first set of interrogatories, nine in its second set, and nine in its third set, for a total of thirty-four interrogatories.  (Docs. 78-1 to 78-3.)  However, Plaintiff objected that many of these interrogatories contain "discrete subparts which should be counted separately."  *Kendall v. GES*

4

*Exposition Servs., Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997); *see* Fed. R. Civ. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, *including all discrete subparts*." (emphasis added)). Specifically, Plaintiff objected that Defendant's interrogatories and "multiple discrete subparts . . . in reality ask [Plaintiff] to answer over 34 [Phase I] interrogatories . . . and over 40 [Phase II] interrogatories."[3]  (Doc. 78-1 at 3.)

As an initial matter, notwithstanding Defendant's argument to the contrary, (Doc. 78 at 9-10), it was reasonable for Plaintiff to refrain from answering any of Defendant's interrogatories in an effort to avoid waiving its supernumerary objection, in light of the *Allahverdi* and *Coyne* decisions, both of which are from this District.  Moreover, the Court agrees with these decisions to the extent they hold that a party may not rely on a supernumerary objection to choose, with unfettered discretion, which requests to answer and which to refrain from answering.  However, the Court also finds that Plaintiff's compliance with *Allahverdi* and *Coyne* has delayed discovery beyond what was required to reasonably limit Plaintiff's discretion in choosing which interrogatories to answer.  In future, should a party to this matter believe that a supernumerary objection is warranted, that party is instructed to "either seek a protective order and not answer the requests at issue[,] or answer up to the numerical limit and object to the remaining requests without answering." *Lowery v. Cnty. of Riley*, 2009 WL 648928, at *3 (D. Kan. Mar. 12, 2009). This procedure will prevent the objecting party from randomly (or strategically) choosing which interrogatories to answer, but, absent a motion for protective order, will also allow the party serving discovery to receive responses to some portion of its requests.

---

[3] By the time it received and objected to Defendant's Third Set of Interrogatories, Plaintiff's estimate of the number of interrogatories Defendant actually served had increased to 107.  (*See, e.g.*, Doc. 78-3 at 3.)

Turning to the substance of Plaintiff's objection, for good or ill, "[i]nterrogatories often contain subparts." *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 664 (D. Kan. 2004) (quoting *Williams v. Bd. of Cnty. Comm'rs of Unified Gov't of Wyandotte Cnty. & Kan. City, Kan.*, 192 F.R.D. 698, 701 (D. Kan. 2000)).

> Extensive use of subparts . . . could defeat the purposes of the numerical limit contained in Rule 33(a), or in a scheduling order, by rendering it meaningless unless each subpart counts as a separate interrogatory.  On the other hand, if all subparts count as separate interrogatories, the use of interrogatories might be unduly restricted or requests for increases in the numerical limit might become automatic.

*Williams*, 192 F.R.D. at 701.  To balance these competing considerations, courts faced with the task of counting interrogatory subparts have generally held that "[s]ubparts count as one interrogatory . . . only if they are logically or factually subsumed within and necessarily related to the primary question." *Rodriguez v. Chavez*, 2013 WL 1444183, at *1 (D. Colo. Apr. 9, 2013) (internal quotation marks and citations omitted).

"However, the more difficult question is determining whether the subparts are logically or factually subsumed within and necessarily related to the primary question." *Kendall*, 174 F.R.D. at 685 (internal quotation marks omitted); *see also Carbajal v. Warner*, 2015 WL 4456190, at *1 (D. Colo. Jul. 21, 2015) ("Identifying a 'discrete subpart' is often one of the more difficult tasks presented to a court." (internal quotations marks and citation omitted)).

> If the questions are relevant to the case, it could be argued that all the interrogatories are "related."  If that were the case, then all the interrogatories would only be counted as one and there could never be an excessive number.  By the same token, the mere inclusion of "and" or "also" in a question . . . does not automatically mean the questions are separate or "discrete" and not subsumed within the initial or primary question.  Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question.  Or, can the subsequent question stand alone? Is it independent of the first question?

*Kendall*, 174 F.R.D. at 685.  In other words, can the first question "be answered fully and completely without answering the second question"?  *Id.* at 686.

In the present matter, as the parties proposed, the Court limited each party to twenty-five Phase I and twenty-five Phase II interrogatories, for a total of fifty interrogatories in the first two phases of discovery.  Nominally, Defendant has moved to compel Plaintiff to answer twenty-eight Phase I and Phase II interrogatories,[4] which include some 112 separately numbered subparts.  The Court has carefully reviewed these interrogatories, and concludes that "[m]any of [them] have discrete subparts and some do not."  *Kendall*, 174 F.R.D. at 686.  Defendant's Interrogatory No. 3, for example, has discrete subparts.  In this interrogatory, Defendant asked Plaintiff to

> [i]dentify each person that each EEOC investigator or other EEOC personnel who was involved with, supervised or worked on the EEOC's investigation, communicated with during the EEOC's investigation arising out of the Henderson . . . and Tenorio . . . administrative charges and:  a) Describe in detail why the investigator or other EEOC personnel . . . selected each such individual for communication as part of the EEOC's investigation of the Henderson and Tenorio allegations; b) Describe in detail the subject matter of each investigator's or other EEOC personnel['s] communication with each individual to include all dates of all communications, a description of what was said by each individual on each occasion he/she communicated to each investigator or other EEOC personnel . . . and what the EEOC personnel communicated to each person on each occasion . . . ; c) For each communication . . . explain whether the communication described was written, oral, in person, by e-mail, by letter or some other method; d) Identify each person who was present for, or participated in, the . . . communication . . . ; e) Identify which individuals each EEOC personnel communicated with who denied experiencing age discrimination and/or retaliatory conduct . . . to include the dates of all such denials; f) Identify which individuals each EEOC personnel . . . communicated with who alleged that . . . she or he had been the subject of age discrimination and/or retaliatory conduct . . . to include the dates of all such allegations; and g) Identify all documents that relate to or detail all EEOC personnel's communications with individuals during the investigation arising out of the Henderson and Tenorio administrative charges, to include all intake forms, notes, spreadsheets, memorandums or other documents that identify the

---

[4] As noted above, Defendant has served thirty-four separately numbered interrogatories on Plaintiff.  (Docs. 78-1 to 78-3.)  However, Defendant subsequently agreed that Plaintiff may defer answering six of these until Phase III discovery.  (Doc. 78 at 13 n.8.)

individuals with whom each EEOC personnel [sic], the dates of all such communications and the subject matter of all communication.

(Doc. 78-1 at 7-9.)  Applying the *Kendall* test, *i.e.*, can the first question be answered fully and completely without answering the subsequent questions, this nominally single interrogatory is in fact at least four.  Plaintiff could fully and completely identify each person with whom its representatives communicated during its investigation of the Henderson and Tenorio charges without, for example, "describ[ing] in detail" why it "selected" each such person for communication (if in fact it did so), or the particulars of each communication the person and an EEOC representative exchanged; and, it certainly could do so without identifying "all documents that relate to or detail" such communications.  *See Rodriguez*, 2013 WL 1444183, at *1 (interrogatory seeking (a) description of training and (b) identification of training documents contained "two distinct interrogatories"); *Kendall*, 174 F.R.D. at 686 (interrogatory seeking (a) description of job qualifications and (b) description of documents articulating job qualifications improperly combined independent questions).

Conversely, in Defendant's Interrogatory No. 6, the first question is primary and subsequent questions are secondary to the primary question.[5]    *Kendall*, 174 F.R.D. at 686.  In this interrogatory, Defendant asked Plaintiff to describe, for each of Defendant's current or former employees from whom Plaintiff "solicited information about potential age discrimination":  (a) "[w]hat the . . . person communicated regarding the individual's experience or witnessing of age discrimination," including where it occurred; (b) each action the person described as age discrimination; (c) the alleged perpetrator of the action; and, (d) the dates on which the action occurred.  (Doc. 78-1 at 16-17.)  Again applying the *Kendall* test, Plaintiff could not fully and completely describe what Defendant's former or current employees

---

[5] However, as discussed below, Interrogatory No. 6 is problematic in other respects.

communicated to Plaintiff about potential age discrimination without including the acts alleged to be age discrimination, the persons who committed the acts, and the dates on which the acts occurred.

By the Court's estimate, including discrete subparts, Defendant has actually served at least eighty-eight Phase I and II interrogatories on Plaintiff, which clearly and substantially exceed the numerical limits the Court has set.  The Court is not inclined to expend scarce judicial resources commenting on why each of Defendant's 112 separately numbered subparts is, or is not, "subsumed by the interrogatory under which [it is] set forth," *Williams*, 192 F.R.D. at 702, when any fair reading of the interrogatories makes it clear that Defendant has exceeded the applicable limits by a significant margin.  Nor will the Court comb through these often lengthy and abstruse interrogatories to determine which ones Plaintiff might most usefully answer.  These tasks are more efficiently and appropriately left to Defendant in the first instance.  For its part, the Court "concludes Plaintiff should not be required to answer the interrogatories as propounded," and sustains Plaintiff's supernumerary objection.  *Id.*  Defendant may, however, amend and serve on Plaintiff not more than twenty-five Phase I interrogatories, and not more than twenty-five Phase II interrogatories, *including all discrete subparts*.  In rewriting these interrogatories, Defendant should adhere strictly to the letter and spirit of the caselaw discussed herein regarding what is, and is not, a "discrete subpart."  Fed. R. Civ. P. 33(a)(1).

2.    Plaintiff's Topical Objections

The Court will also sustain Plaintiff's objections regarding the discoverability of information about the adequacy of Plaintiff's pre-filing conciliation efforts.  Specifically, Plaintiff objected to Defendant's Interrogatories Nos. 13, 14, 15, and 16, which seek detailed information about Plaintiff's efforts to conciliate the claims at issue,

9

based on relevance because under Supreme Court preceden[t], *EEOC v. Mach Mining*, 135 S. Ct. 1645 (2015)[,] judicial review is limited and a [c]ourt "looks only to whether the EEOC attempted to confer about a charge, and not [to] what happened ([*i.e.,*] statements made or positions taken) during those discussions." *Id.* at 1656.[6]

(Doc. 78-1 at 37-42.)

Although *Mach Mining, LLC v. EEOC*, — U.S. —, 135 S. Ct. 1645 (2015), does not directly address the scope of permissible discovery regarding the EEOC's conciliation efforts in employment discrimination cases, it certainly provides guidance regarding the extent to which such discovery is proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."). In *Mach Mining, LLC*, the Supreme Court held that, a court reviewing the EEOC's conciliation efforts should determine whether "the EEOC afford[ed] the employer a chance to discuss and rectify a specified discriminatory practice," but no more. *Mach Mining, LLC*, 135 S. Ct. at 1653.

> [T]he EEOC must inform the employer about the specific allegation, as the Commission typically does in a letter announcing its determination of "reasonable cause." Such notice properly describes both what the employer has done and which employees (or what class of employees) have suffered as a result. And the EEOC must try to engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the allegedly discriminatory practice. Judicial review of those requirements (and nothing else) ensures that the Commission complies with the statute. At the same time, that relatively barebones review allows the EEOC to exercise all the expansive

---

[6] Plaintiff did not object to any other interrogatories based on *Mach Mining, LLC* in its April 8 and 14, 2016 answers to Defendant's interrogatories. (*See generally* Docs. 78-1 to 78-3.) As such, Plaintiff has waived the additional objections on this basis that it made in its response to Defendant's Motion to Compel Answers, (Doc. 85 at 20-23), and the Court will not address those objections here. *See* Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."). However, the Court notes that *Mach Mining, LLC* concerned judicial review of the EEOC's duty to conciliate, not its duty to investigate. *Cf. EEOC v. Sterling Jewelers Inc.*, 801 F.3d 96, 98 (2d Cir. 2015) ("Under Title VII, courts may review whether the EEOC conducted an investigation, but not the sufficiency of an investigation."). Further, discovery regarding Plaintiff's investigation is much more likely to overlap with discovery regarding the merits of Plaintiff's claims.

> discretion Title VII[7] gives it to decide how to conduct conciliation efforts and
> when to end them.

*Id.* at 1655-56 (internal citation omitted).

Significantly, the Supreme Court observed that "[a] sworn affidavit from the EEOC stating that it has performed the obligations noted above but that its efforts have failed will usually suffice to show that it has met the conciliation requirement." *Id.* at 1656. However, if an employer

> provides credible evidence of its own, in the form of an affidavit or otherwise, indicating that the EEOC did not provide the requisite information about the charge or attempt to engage in a discussion about conciliating the claim, a court must conduct the factfinding necessary to decide that limited dispute.[8]

*Id.* The Court specifically rejected the proposition that courts should "do a deep dive into the conciliation process" to determine whether the EEOC negotiated with an employer "in good faith." *Id.* at 1653-54. "[A] court looks only to whether the EEOC attempted to confer about a charge, and not to what happened (*i.e.*, statements made or positions taken) during those discussions." *Id.* at 1656.

The Court finds that Defendant's Interrogatories Nos. 13 to 16 are not proportional to the needs of the case in light of *Mach Mining, LLC* and Rule 26(b)(1). If the Court is forbidden to "do a deep dive into the conciliation process," 135 S. Ct. at 1653, there is very little use in allowing Defendant to undertake such a dive, either, and certainly not enough use to justify the burden and expense of it. Defendant could reasonably ask Plaintiff on what date and by what means Plaintiff claims that it "informed [Defendant] about the specific allegation[s]" against it. *Id.* at 1655. Defendant might also reasonably seek to discover the scope of the notice Plaintiff

---

[7] Neither party has argued that *Mach Mining, LLC* should not apply to this case because Plaintiff's claims are brought under the ADEA rather than Title VII, and, as such, the Court will not consider that argument here.

[8] Should a court find that the EEOC has not satisfied Title VII's conciliation requirement, "the appropriate remedy is to order the EEOC to undertake the mandated efforts to obtain voluntary compliance." 135 S. Ct. at 1656.

claims it provided, *e.g.*, by asking Plaintiff to state what it told Defendant it "ha[d] done and which employees (or what class of employees) have suffered as a result." *Id.* at 1656. Finally, Defendant might appropriately ask Plaintiff on what date and by what means it tried "to engage the employer in some form of discussion." *Id.* However, discovery regarding the "statements made or positions taken" during conciliation is, after *Mach Mining, LLC*, simply not relevant or proportional to the needs of the case. *Id.*; Fed. R. Civ. P. 26(b)(1). As currently written, Defendant's Interrogatories Nos. 13 to 16 dive too deeply into an area of inquiry that *Mach Mining, LLC* has restricted, and the Court will therefore sustain Plaintiff's topical objections to them.

3.  Plaintiff's Remaining Objections

In light of the foregoing, the Court will not minutely address Plaintiff's remaining objections to particular interrogatories based on, for example, vagueness, ambiguity, overbreadth, over-burdensomeness, duplication, the governmental deliberative process privilege, the attorney-client privilege, and the attorney work-product doctrine. (*See generally* Docs. 78-1 to 78-3.) However, the Court notes that many of these objections are well-founded, and that Defendant could have forestalled them by drafting its interrogatories with greater care and precision. For example, Defendant's Interrogatory No. 6 states:

> For each NMCD current or former employee from whom you solicited information about potential age discrimination, describe, in detail: a) What the identified person communicated regarding the individual's experience or witnessing of age discrimination to include an identification of the NMCD facility where the age discrimination allegedly occurred; b) A detailed description of each and every action each responding person described as age discrimination, to include dates of each such action; c) The identity of any NMCD employee or former employee alleged by each person responding to be the perpetrator(s) of any of the specific incidents of age discrimination experienced or witnessed by any current or former NMCD employee; and d) the date(s) on which each act of alleged age discrimination witnessed or experienced, was alleged to have occurred.

(Doc. 78-1 at 16-17.)   Setting aside various minor flaws,[9] the interrogatory is, as Plaintiff objects, fatally vague, ambiguous, and potentially overbroad, because it is not limited to a particular time period or investigation, and could therefore include communications regarding age discrimination that former NMCD employees made to the EEOC years or even decades ago. (*Id.*)  Nor has Defendant made any effort to exclude from this interrogatory whole categories of information that are indubitably privileged, such as confidential post-filing communications between Plaintiff's attorneys and identified aggrieved individuals in this case.  (*Id.*); *see, e.g.*, *EEOC v. Int'l Profit Assocs.*, 206 F.R.D. 215, 219 (N.D. Ill. 2002) (When EEOC brings suit on behalf of individuals, the attorney-client privilege protects communications between EEOC attorneys and "employees upon whose behalf it sues.") (collecting cases).  The Court therefore admonishes Defendant, when amending its interrogatories in compliance with this order, to be diligent in ensuring that the interrogatories are clear, precise, non-duplicative, and reasonably limited in scope, and do not seek broad categories of information that are obviously privileged or otherwise protected from disclosure.

### 2.      Defendant's Second and Third Sets of Requests for Production

Defendant has also moved the Court to compel Plaintiff to fully respond to ten of Defendant's requests for production, specifically, Requests Nos. 4 to 13.[10]  (Doc. 78 at 7-27.) The Court will address these requests in turn.

a.      Requests Nos. 4 and 5:  In these requests, Defendant asked Plaintiff to produce all documents identified in Plaintiff's answers to Defendant's interrogatories.  (Doc. 78-

---

[9] For example, the interrogatory twice asks for the dates of alleged acts of age discrimination, and asks Plaintiff to "describe, in detail . . . [a] detailed description" of the alleged acts.  (Doc. 78-1 at 16-17.)  The interrogatory also appears to include communications made to anyone, not just to EEOC representatives or some other limited category of persons.  (*Id.*)

[10] In the requests and responses attached to Defendant's Motion to Compel Answers, Request No. 13 is incorrectly numbered as Request No. 12.  (Doc. 78-5 at 15-16.)

4 at 6; Doc. 78-5 at 6; Doc. 85-2 at 2; Doc. 85-3 at 2.)  However, in Section II.A.1., *supra,* the Court held that Plaintiff need not answer Defendant's interrogatories.  As such, there are no documents responsive to these requests, and Plaintiff need not answer them.  Moreover, because Defendant's interrogatories included numerous vague, ambiguous, and overbroad requests for Plaintiff to identify documents, the Court finds that Requests Nos. 4 and 5 are likewise vague, ambiguous, and overbroad; also, they seek entire categories of documents that are obviously privileged or otherwise protected from disclosure.  *See, e.g.*, *Int'l Profit Assocs.*, 206 F.R.D. at 219.  For example, a complete response to these requests would likely require Plaintiff to produce its entire litigation file, including all attorney notes prepared in anticipation of litigation, and all confidential post-filing communications between EEOC attorneys and identified aggrieved individuals. (Docs. 78-1 to 78-3.)  The vague, ambiguous, and sweeping nature of the requests also makes it unduly burdensome for Plaintiff to generate a privilege log in response to them; and, the Court specifically holds that Plaintiff has not waived any objections by failing to produce such a log, particularly when it has already generated several logs in conjunction with the production of its investigative file to Defendant.  (Doc. 105 at 1.)  For all of these reasons, the Court will deny Defendant's motion to compel Plaintiff to respond to Defendant's Requests Nos. 4 and 5.

b.   <u>Requests Nos. 6 and 7</u>:  In these requests, Defendant asked Plaintiff to produce "compliance manuals" and "other documents generated by the EEOC," in effect from 2009 to the present, that "relate to" how the EEOC investigates, determines, and conciliates charges of discrimination and retaliation, including charges brought under the ADEA. (Doc. 78-5 at 7-9; Doc. 85-3 at 4-6.)  Plaintiff made a number of objections to these requests, but, subject to these objections, agreed to produce the responsive compliance manual that is "currently

14

available," and also "previous iterations" to the extent it is able to locate them.  (Doc. 85-3 at 5-6.)  The Court finds that Plaintiff's proposed response to these requests is sufficient, and sustains its objections on the grounds of relevance, proportionality, overbreadth, ambiguity, and privilege to the extent Requests Nos. 6 and 7 seek "other" responsive documents "generated by the EEOC" from 2009 to the present.  (*Id.*)  The Court will deny Defendant's motion to compel Plaintiff to respond more fully to these requests.

              c.    <u>Request No. 8</u>:  In this request, Defendant asked Plaintiff to produce "all documentation" exchanged between any EEOC representative and:  (a) the charging parties, *i.e.*, Messrs. Tenorio, Henderson, and Martinez; (b) the charging parties' attorneys; (c) "persons alleged to have witnessed or to have any knowledge of age discrimination or retaliation"; or, (d) "any other [a]ggrieved [i]ndividuals discovered during the course of" any investigation into the Tenorio, Henderson, and Martinez charges.  (Doc. 78-5 at 9; Doc. 85-3 at 7.)  Plaintiff made several objections to this request, but, subject to these objections, noted that it has already produced all non-privileged documents in its "investigative files" regarding the specified charges, and provided the Bates numbers of many of these documents.  (Doc. 85-3 at 7-10.)  The Court will sustain Plaintiff's objections to Request No. 8 on the grounds of overbreadth, burdensomeness, and privilege.  On its face, the request seeks whole categories of information that are obviously privileged or otherwise protected from disclosure.  *Int'l Profit Assocs.*, 206 F.R.D. at 219.  The Court will therefore deny Defendant's motion to compel Plaintiff to respond to this request.

              d.    <u>Request No. 9</u>:  In this request, Defendant asked Plaintiff to produce all documents and tangible items Plaintiff received from Defendant's current or former employees "in response to the EEOC's request for information pertaining to allegations of age

discrimination or retaliation."  (Doc. 78-5 at 12; Doc. 85-3 at 10.)  Plaintiff made several objections to this request, but, subject to these objections, referred Defendant to its response to Request No. 8.  (Doc. 85-3 at 10-11.)  The Court will sustain Plaintiff's objections to Request No. 9 on the grounds of ambiguity, overbreadth, burdensomeness, and privilege.  Like Interrogatory No. 6, Request No. 9 is not limited to a particular time period or to documents related to this case, and, again, includes whole categories of documents that are obviously privileged or otherwise protected from disclosure.  *Int'l Profit Assocs.*, 206 F.R.D. at 219.  The Court will therefore deny Defendant's motion to compel Plaintiff to respond to this request.

   e. <u>Request No. 10</u>:  In this request, Defendant asked Plaintiff to produce "the contents" of all of Plaintiff's "investigative files" from 2010 to the present, "pertaining to" the Tenorio, Henderson, and Martinez charges of discrimination, "to include all files . . . related to other individuals who allege they were the victims of age discrimination or retaliation by the NMCD."  (Doc. 78-5 at 13; Doc. 85-3 at 11.)  Plaintiff made several objections to this request, but, subject to these objections, referred Defendant to its responses to Defendant's First Request for Production.  (Doc. 85-3 at 11-12.)  The Court will sustain Plaintiff's objections to Request No. 10 on the grounds of overbreadth, duplication, and privilege; again, the request seeks whole categories of documents that are obviously privileged or otherwise protected from disclosure. *Int'l Profit Assocs.*, 206 F.R.D. at 219.  The Court will therefore deny Defendant's motion to compel Plaintiff to respond to this request.

   f. <u>Request No. 11</u>:  In this request, Defendant asked Plaintiff to produce all statements, and documents containing statements, "from current or former NMCD employees obtained by the EEOC from 2010 to the present."  (Doc. 78-5 at 14; Doc. 85-3 at 12.)  Plaintiff made several objections to this request, but, subject to these objections, noted that it had already

produced "all non-privileged interview notes, statements or affidavits obtained during the administrative investigation" of the Henderson, Tenorio, and Martinez charges from 2010 to 2014.  (Doc. 85-3 at 13.)  The Court will sustain Plaintiff's objections to Request No. 11 on the grounds of overbreadth, burdensomeness, and privilege; in particular, the request is not limited to statements regarding this case, or even regarding age discrimination and retaliation, nor does it exclude categories of documents that are obviously privileged or otherwise protected from disclosure.  *Int'l Profit Assocs.*, 206 F.R.D. at 219.  The Court will therefore deny Defendant's motion to compel Plaintiff to respond to this request.

g.     Request No. 12:  In this request, Defendant asked Plaintiff to produce "all documents which demonstrate the date and substance of each action" Plaintiff believes constituted age discrimination or retaliation, that Plaintiff "discovered" during "any" investigation.  (Doc. 78-5 at 14; Doc. 85-3 at 13-14.)  Plaintiff made several objections to this request, but, subject to these objections, referred Defendant to its responses to Requests Nos. 1 and 8.  (Doc. 85-3 at 14-15.)  The Court will sustain Plaintiff's objections to Request No. 12 on the grounds of overbreadth, burdensomeness, and privilege.  This request is extraordinarily overbroad in that it seeks "all" documentation of age discrimination or retaliation Plaintiff discovered during "any" investigation, and is not limited to a particular time period or even to a particular employer.  The Court will therefore deny Defendant's motion to compel Plaintiff to respond to this request.

h.     Request No. 13:  In this request, Defendant asked Plaintiff to produce all documents "reflecting" communications between Plaintiff and the Human Rights Division of the New Mexico Department of Workforce Solutions ("HRD") concerning "any" EEOC investigation of the charges or claims of Mr. Tenorio, Mr. Henderson, Mr. Martinez, or "other

non-charging NMCD current or former employees." (Doc. 78-5 at 15-16; Doc. 85-3 at 15.) Plaintiff objected to this request, but, subject to its objections, stated that "all non-privileged responsive documents were produced" in its response to Defendant's First Request for Production. (Doc. 85-3 at 15-16.) The Court will sustain Plaintiff's objections to Request No. 13 on the grounds of overbreadth and burdensomeness. Again, this request is strikingly overbroad in that it seeks documents reflecting communications between Plaintiff and HRD concerning "any" EEOC investigation of a current or former NMCD employee's charge or claim of discrimination, with no limitation as to the dates or types of discrimination. The Court will therefore deny Defendant's motion to compel Plaintiff to respond to this request.

In sum, the Court will deny Defendant's Motion to Compel Answers in its entirety, although Defendant may carefully amend and serve on Plaintiff not more than fifty Phase I and II interrogatories, including all discrete subparts. The Court notes that, in briefing this motion, and in the course of at least one other discovery dispute, Defendant has leveled unfounded accusations of impropriety and "bad faith" at Plaintiff, (*see, e.g.*, Doc. 78 at 11, 19, 22; Doc. 102 at 29; Doc. 105 at 1), contrary to the spirit of this Court's Initial Scheduling Order, which states that "[c]ivility and professionalism are required of counsel throughout this litigation. Counsel *must* comply with the State Bar of New Mexico's 'Creed of Professionalism.'" (Doc. 5 at 1 (emphasis in original).) The Court respectfully reminds Defendant that accusations of bad faith are a serious matter that should be approached with due circumspection.

## B.    Defendant's Motion to Compel Deposition

In its Motion to Compel Deposition, Defendant asks the Court to compel Plaintiff to produce Robert Tenorio, a charging party and identified aggrieved individual, to be deposed for three additional hours. (Doc. 106 at 1.) The parties agree that Defendant has already deposed

Mr. Tenorio for about seven hours, the time limit Federal Rule of Civil Procedure 30 imposes for depositions. (*Id.* at 4; Doc. 111 at 2); Fed. R. Civ. P. 30(d)(1). The parties also agree that a party seeking to depose a person for more than seven hours must show good cause for seeking to extend the seven-hour limit. (Doc. 106 at 5; Doc. 111 at 3); *George K. Baum Advisors LLC v. Sprint Spectrum, L.P.*, 2013 WL 3166335, at *2 (D. Kan. 2013); *Martinez v. Cornell Corr. of Tex., Inc.*, 229 F.R.D. 194, 195 (D.N.M. 2005). Such cause may include, *inter alia*, "the volume of facts and issues" to be covered at the deposition. *Martinez*, 229 F.R.D. at 197.

In the present matter, the Court finds that Defendant has shown good cause to depose Mr. Tenorio for three additional hours. Mr. Tenorio has information, not only about the three charges of discrimination and retaliation that he filed during a three-year period, but also, potentially, about the claims of several other aggrieved individuals in this case, including Richard Henderson, Albert Herrera, Ben Lujan, and Marilyn Lujan. (*See, e.g.*, Doc. 111-2 at 149:11 to 151:17.) This increases the number of subjects Defendant may properly wish to address at the deposition. Also, Mr. Tenorio has filed a separate but related lawsuit against Defendant in state court, which further increases the number of subjects about which Defendant may appropriately wish to depose Mr. Tenorio. (*Id.* at 219:23 to 220:10.)

Defendant is also entitled to a reasonable opportunity to depose Mr. Tenorio about Plaintiff's supplemental answer to Defendant's Interrogatory No. 28 regarding Mr. Tenorio's charges, which Plaintiff did not serve on Defendant until September 1, 2016, well after Mr. Tenorio's July 7, 2016 deposition. (*Id.* at 1; Doc. 127-2.) As discussed in Section II.A.1. above, Plaintiff's prior refusal to answer this interrogatory based on its supernumerary objection was reasonable. However, having reached a compromise with Defendant[11] and provided an answer

---

[11] This compromise apparently allowed Plaintiff to answer a portion of Interrogatory No. 28 without waiving its supernumerary objection. (Doc. 111 at 8; Doc. 127-2 at 2.)

regarding Mr. Tenorio's claims, Plaintiff cannot reasonably dispute that this answer may generate follow-up questions Defendant has not yet had the opportunity to ask.  Also, Plaintiff admittedly gave Defendant at least some documents from Mr. Tenorio's private counsel on July 5, 2016, two days before the July 7, 2016 deposition, (Doc. 111 at 2); and although, again, the Court has no reason to think Plaintiff's production of documents on this date was based on an improper motive, it nevertheless left Defendant with little time to review them before the deposition.

The fact that each side had three lawyers present at Mr. Tenorio's deposition no doubt also lengthened the time it took for Defendant to depose him.[12]  However, the Court disagrees with Defendant's argument that it was "improper" for Justin Pennington, the attorney representing Mr. Tenorio in his state court lawsuit, to attend and object.  (Doc. 106 at 3-4.)  At the deposition, defense counsel Ellen Casey questioned Mr. Tenorio specifically and extensively about his state law claims.  (*See, e.g.*, Doc. 111-2 at 219:23 to 233:4.)  As such, it was entirely appropriate for Mr. Pennington (and for Mr. Jarmie, who represents Defendant in the state court action), to attend the deposition, and for Mr. Pennington to represent his client by making brief, civil, nonfrivolous objections.[13]  Moreover, in the main, Mr. Pennington's objections were reasonable in quantity and substance.  The deposition transcript contains 288 pages of testimony, including approximately ten pages containing objections by Mr. Pennington; and, many of these objections were very brief.  (*Id.* at 125, 132, 201, 203-08, 210.)  The exchanges between Ms. Casey and Mr. Pennington at pages 205 to 210 of the transcript were somewhat more extensive;

---

[12] At the deposition, Loretta Medina and Michael Baskind represented Plaintiff; Justin Pennington represented Mr. Tenorio; and, Ellen Casey, Jennifer James, and Mark Jarmie represented Defendant.  (Doc. 111-2 at 2:2-14.)

[13] Defendant argues that Mr. Jarmie's presence, unlike Mr. Pennington's, was appropriate because Mr. Jarmie "did not first chair the defense of" or otherwise participate in the deposition.  (Doc. 127 at 5.)  This argument is without merit.  As an attorney representing Mr. Tenorio's opponent, Mr. Jarmie naturally would not defend Mr. Tenorio's deposition; and, Mr. Jarmie had neither the need nor the opportunity to actively represent Defendant, because Ms. Casey questioned Mr. Tenorio about his state law claims, and her examination took the entire day.

however, both Ms. Casey and Mr. Pennington contributed to the lengthier and more problematic nature of these exchanges.   Moreover, Ms. Casey chose to object to Mr. Pennington's participation in the deposition four times, which also lengthened the deposition beyond what was required to preserve the objection.   (Doc. 111-2 at 51:12 to 52:5, 126:2-5, 132:24-25, and 206:10-11.)

The Court notes that, in briefing this motion, counsel for both sides frequently made somewhat exaggerated factual assertions and strained legal arguments, and used a tone less than wholly civil in describing their opponents' actions.   The Court advises counsel that conduct of this type erodes the Court's confidence in counsel's statements and arguments, as well as the professionalism to which all members of the legal profession should aspire.   The Court respectfully requests that counsel more vigilantly monitor the accuracy and validity of their statements and arguments, and moderate their tone, in future pleadings.   For all of the foregoing reasons, the Court will grant that portion of Defendant's Motion to Compel Deposition which asks the Court to compel Plaintiff to produce Mr. Tenorio for no more than three additional hours of deposition.   However, the Court will deny the motion insofar as it asks the Court to prohibit Mr. Pennington from making brief, civil, nonfrivolous objections during the deposition. Moreover, the Court cautions Defendant that it may not use its additional three hours to ask Mr. Tenorio questions that he already answered during the first seven hours of his deposition.

## C.      Award of expenses under Federal Rule of Civil Procedure 37

Finally, the Court will not award expenses to either party as a result of Defendant's motions to compel.   Pursuant to Federal Rule of Civil Procedure 37, if a party's motion to compel is granted or discovery is provided only after the motion is filed, the Court must generally require the opposing party and/or its counsel to pay the movant's reasonable expenses

incurred in making the motion.  Fed. R. Civ. P. 37(a)(5)(A).  However, the Court must not require payment of such expenses if, *inter alia*, "the opposing party's nondisclosure, response, or objection was substantially justified," or "other circumstances make an award of expenses unjust."  *Id.*  Similarly, if a motion to compel is denied, the Court must generally award expenses to the party opposing the motion, but again, not if "the motion was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(B).  Finally, "[i]f the motion is granted in part and denied in part, the court…*may*…apportion the reasonable expenses for the motion."  Fed. R. Civ. P. 37(a)(5)(C) (emphasis added).

In this case, the Court has denied Defendant's Motion to Compel Answers, but has granted the larger part of its Motion to Compel Deposition.  As to both motions, each party has taken some positions that are substantially justified, and some that are without merit.  In these circumstances, an award of expenses to either party would be unjust and inappropriate under Rule 37(a)(5)(A) and (B), and the Court declines to exercise its discretion under Rule 37(a)(5)(C) to apportion expenses between the parties.

## III.  Conclusion

IT IS THEREFORE ORDERED as follows:

1.    Defendant New Mexico Corrections Department's Motion to Compel Plaintiff EEOC's Answers to Defendant's First, Second and Third Sets of Interrogatories and Defendant's Second and Third Sets of Requests for Production (Doc. 78) is DENIED.  However, Defendant may amend and serve on Plaintiff not more than twenty-five Phase I interrogatories, and not more than twenty-five Phase II interrogatories, *including all discrete subparts*.  Plaintiff shall respond and/or object to any amended interrogatories in accordance with Federal Rule of Civil Procedure 33.

2.      Defendant's Motion to Compel Continuation of Deposition of Robert Tenorio (Doc. 106) is GRANTED IN PART and DENIED IN PART.  Plaintiff is to make Robert Tenorio available for Defendant to depose for no more than three additional hours.  Justin Pennington may attend the deposition and assert brief, civil, nonfrivolous objections on Mr. Tenorio's behalf.

3.      The Court will not award expenses to either party pursuant to Federal Rule of Civil Procedure 37 as a result of Defendant's motions to compel.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE