**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,**

        **Plaintiff,**

    **-vs-**                           **No. 1:15-cv-00879 KG/KK**

**NEW MEXICO CORRECTIONS DEPARTMENT,**

        **Defendant.**

**NEW MEXICO CORRECTIONS DEPARTMENT'S MOTION AND MEMORANDUM
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant New Mexico Corrections Department ("NMCD"), pursuant to Rule 56 of the
Federal Rules of Civil Procedure, moves for partial summary judgment on Plaintiff Equal
Employment Opportunity Commission's ("EEOC") following claims:  (1) EEOC's disparate
treatment claims on behalf of claimants identified to NMCD prior to the litigation that arose after
the EEOC's investigation and conciliation of the Robert Tenorio and Richard Henderson
administrative charges; (2) EEOC's disparate treatment claims on behalf of all individuals
"discovered" by EEOC after its Reasonable Cause Determinations on the Tenorio and Henderson
charges, after the conciliation of those charges, and after the litigation commenced; and (3)
EEOC's disparate treatment claims on behalf of all claimants that arose at NMCD facilities other
than Central New Mexico Corrections Facility.   NMCD submits the following memorandum in
support of its motion.

**I.**      **INTRODUCTION**

On September 30, 2015, EEOC filed suit against NMCD alleging that "from at least
January, 2009 though at least December, 2014," NMCD has "denied employment opportunities to
older workers based on their age, age 40 and over."  Compl. [Doc. 1], ¶ 66; First Amd. Compl.

[Doc. 42], ¶ 66.  In the litigation, EEOC alleges age discrimination and retaliation by NMCD from 2009 to the ever-changing present on behalf of three identified Charging Parties (Robert Tenorio, Richard Henderson, and Paul Martinez), all of whom were employed at one of NMCD's adult correctional facilities, as well as an unidentified and undefined group of "other aggrieved individuals."  *See, e.g.*, First Amd. Compl. [Doc. 42], ¶¶ 66-75, 77-80, 89, 90, 99-101.

On January 14, 2016, EEOC identified 18 "aggrieved individuals" (hereinafter referred to as the "Pre-Litigation Identified Aggrieved" or "PLIA").  *See* Exh. 1 to Joint Status Report [Doc. 10-1].  No non-charge filing NMCD employees allegedly subjected to disparate treatment based on age were identified in the Amended Complaint.  No discriminatory conduct engaged in by any NMCD employee against the unidentified "other aggrieved" was asserted in the Amended Complaint.  The Amended Complaint fails to provide notice to NMCD of the claims against it by any non-charging aggrieved individuals and is the subject of a pending Motion to Dismiss [Doc. 144].

On April 28, 2017, more than a year and a half into the litigation, EEOC identified an additional 99 "aggrieved individuals" (hereinafter referred to as the "Litigation Identified Aggrieved Individuals" or "LIAI") alleging that these persons had also been subjected to disparate treatment age discrimination, retaliation or harassment from 2009 through 2017.  *See* EEOC's Initial Phase Three Disclosures, Exh. 1.  NMCD was never advised of these claims or claimants during the investigation or conciliation.  NMCD had no notice that it was facing multiple claims by EEOC on behalf of these 99 LIAIs and was never advised of their names and had no information whatsoever about their claims at any time prior to April 2017.  Just as with the PLIAs, the NMCD was deprived of *any* pre-litigation notice and opportunity to remedy unknown age discrimination relating to these newly-identified 99 LIAIs.

To date, NMCD has expended more than $700,000 in litigating EEOC's disparate treatment claims on behalf of the 18 PLIAs in EEOC's Initial Disclosures in this litigation.[1]  The vast majority of that expenditure has been directed to "discovering" the most basic facts about EEOC's claims.  This exorbitant expenditure of state funds has been necessitated by the fact that EEOC failed to investigate, provide the employer with the information required in the Tenorio and Henderson RCDs, or to engage in meaningful conciliation of the claims of any non-charging NMCD employees.

As set forth in detail below, summary judgment is appropriate as to the following claims: (1) EEOC's disparate treatment claims on behalf of PLIAs that arose after the EEOC's 2010-2013 investigation of the Tenorio (Nos. 543-2011-00991 and 39B-2011-00158) and Henderson (No. 543-2010-01360) administrative charges and after conciliation of those charges; (2) EEOC's disparate treatment claims on behalf of all individuals "discovered" by EEOC after its RCDs on the Tenorio and Henderson charges, after the conciliation of those charges, and after the litigation commenced; and (3) EEOC's disparate treatment claims on behalf of all claimants that arose at NMCD facilities other than CNMCF.  The grounds for summary judgment are as follows:

- EEOC failed to investigate the potential claims of numerous PLIAs and the 99 LIAIs never identified by name or otherwise and failed to provide NMCD an opportunity to remedy the wholly unknown discrimination or to conciliate all claims against it, thereby dispensing with a mandatory prerequisite to suit, *see Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1311 (10th Cir. 2005), and severely prejudicing NMCD in this litigation; and

---

[1] Just as with the claims of the PLIAs, NMCD will be required to foot the bill for EEOC's missing investigation/conciliation by reviewing and producing hundreds of thousands of documents detailing the entire employment history of each of the LIAIs so EEOC can figure out whether there is any basis to add these individuals to the litigation based on conduct spanning a (now) nine-year period.  EEOC has asserted that it is *NMCD's burden* to review documents and interview NMCD officials to determine what allegedly discriminatory and retaliatory acts are actually at issue in this litigation.  *See* Resp. to Mot. to Comp. [Doc. 257], p.9 n.4.  The parties have not yet begun discovery on the 99 LIAIs, as the Court has indefinitely postponed the start of Phase III discovery in this case due to EEOC's failure to provide basic information on the claims of the PLIAs two years into the litigation.

- EEOC failed to investigate, make a reasonable cause finding on, or advise NMCD in conciliation that EEOC (1) planned to continually add new claims based on events arising to the date of trial, far outside the EEOC's declared relevant time period (2010-2013); (2) planned to seek relief on behalf of aggrieved individuals who were not employed at CNCMF but instead at other NMCD facilities in the state; and (3) planned to seek relief for acts of discrimination and retaliation allegedly committed by NMCD officials other than Mr. Romero, thereby dispensing with a mandatory prerequisite to suit thereby dispensing with a mandatory prerequisite to suit, *see Shikles*, 426 F.3d at 1311, and severely prejudicing NMCD in this litigation.

## II.    UNDISPUTED MATERIAL FACTS

### NMCD

1.      NMCD operates six different "correctional facilities" throughout the State of New Mexico.  NMCD has two additional facilities relating to probation and parole and central office operations.  Each correctional facility has a Warden and one or more Deputy Wardens.  *See* Affidavit of Alisson Safir Sjue ("Sjue Aff."), ¶ 5, attached as Exh. 2.

2.      Charging parties Tenorio, Henderson, and Martinez worked at Central New Mexico Correctional Facility ("CNMCF") in Los Lunas at all relevant times and the allegations in their administrative charges of age discrimination arose out of events occurring while they were employed at CNMCF.  *See* Sjue Aff., ¶ 6, Exh. 2.

3.      Anthony Romero was the Warden of CNMCF from 2009 until 2011 when he transferred to Penitentiary New Mexico to become Deputy Warden, and then subsequently, the Deputy Division Director of NMCD's Adult Prisons Division at the Central Office in Santa Fe. *See* Sjue Aff., ¶ 7, Exh. 2.

### Charging Parties

4.      Richard Henderson filed his first EEOC Charge of Discrimination ("COD") against NMCD on August 25, 2010, alleging that he had been discriminated against by Mr. Romero and

denied a promotion at CNMCF on the basis of age in violation of the ADEA. *See* Doc. 42, ¶ 33; Sjue Aff., ¶ 8, Exh. 2.

5.     On May 13, 2011, Mr. Henderson filed what he characterized as an "Amended Charge" in which he claimed he was "removed from his post" and subjected to an "internal investigation" at CNMCF in retaliation for filing his original Charge. *See* Sjue Aff., ¶ 9, Exh. 2.

6.     NMCD responded to Henderson's COD on September 24, 2010 and to his "amended" COD on May 23, 2011. *See* Sjue Aff., ¶ 10, Exh. 2.

7.     Robert Tenorio filed his first administrative charge against NMCD on September 24, 2010, checking the boxes for "age discrimination" and "retaliation" and premising his charge on allegations of "adverse employment actions" by Mr. Romero, all of which occurred at CNMCF. The NMCD responded to Tenorio's COD on December 30, 2010. *See* Sjue Aff., ¶ 11, Exh. 2.

8.     Mr. Tenorio filed a second administrative charge in June 2011 in which he asserted he was retaliated against for being "a witness in another [Henderson's] EEOC investigation." The NMCD responded to Tenorio's second COD on July 6, 2011. *See* Sjue Aff., ¶ 12, Exh. 2.

9.     In May of 2012, Mr. Tenorio purported to "amend" his June 2011 charge by claiming he had been denied unidentified "promotions" to three warden positions in retaliation for the filing of his June 2011 COD. NMCD responded to Tenorio's amended COD on May 24, 2012. *See* Sjue Aff., ¶ 13, Exh. 2.

10.     Paul Martinez filed an administrative charge against NMCD on September 12, 2013, alleging discrimination based on age as a result of not receiving a promotion. NMCD responded to Martinez's COD on November 4, 2013. *See* Sjue Aff., ¶ 14, Exh. 2.

## Pre-Litigation "Investigation"

11.     The EEOC advised NMCD that it would be investigating the Henderson Charge (No. 543-2010-01360) on or about September 3, 2010.  *See* Exh. A to Sjue Aff., ¶ 15, Exh. 2.

12.     The EEOC advised NMCD that it would be investigating the Tenorio Charge (No. 39B-2011-0158) on or about November 9, 2010.  *See* Exh. B to Sjue Aff., ¶ 16, Exh. 2.

13.     The EEOC advised NMCD that it would be investigating the Martinez Charge (No. 543-2013-01212) on or about September 27, 2013.  *See* Exh. C to Sjue Aff., ¶ 17, Exh. 2.

14.     On October 7, 2010, EEOC (referencing Henderson Charge No. 543-2010-01360) requested information from NMCD regarding COs who sought promotions within NMCD.  *See* Exh. D to Sjue Aff., ¶ 18, Exh. 2.  Before responding to the request, NMCD confirmed with the EEOC that the information sought by EEOC was limited only to the lieutenant rank and above at CNMCF where Mr. Henderson and the only "discriminator" ever identified by Henderson in his administrative charges (then-Warden Romero) was employed.  *See* Exh. E to Sjue Aff., ¶ 18, Exh. 2.  NMCD provided the additional information requested by the EEOC for lieutenants and higher on November 5, 2010 for only the CNMCF facility.  *See* Exh. F to Sjue Aff., ¶ 18, Exh. 2.

15.     In May 2011, EEOC Investigator Jeff Stuhlmann requested to interview Anthony Romero, Robert Trujillo, Joe Garcia, Robert Tenorio, and Larry Phillips at CNMCF (where all were employed) as part of the investigation of Henderson's COD (No. 543-2010-1360).  *See* Exh. G to Sjue Aff., ¶ 19, Exh. 2.

16.     The intake notes/affidavits created by EEOC investigator Stuhlmann from these May 2011 interviews reflect that the EEOC was investigating the allegations made by Henderson against Mr. Romero while both were employed at CNMCF.  *See* Exh. H to Sjue Aff., ¶ 20, Exh. 2.

17.     On October 26, 2011, EEOC Investigator Stuhlmann (referencing Henderson's COD) requested that NMCD provide additional information including, *inter alia*, a list of employees and a list of complaints of discrimination generally made by all NMCD employees. *See* Exh. I to Sjue Aff., ¶ 21, Exh. 2.   In its response, NMCD's EEO Officer Vivian Smith questioned the scope of the request and asked that the scope and timeframe of the request be narrowed. *See* Exh. J to Sjue Aff., ¶ 21, Exh. 2.  EEOC agreed to limit the request to CNMCF and the time period in which Mr. Romero was the CNMCF Warden.  *See* Exh. K to Sjue Aff., ¶ 21, Exh. 2; Deposition of Jeremy Yubeta (4/19/17), 62:2-9, 63:14-18 ("Yubeta Depo."), attached as Exh. 3.  NMCD responded to the request on November 17, 2011.  *See* Exh. L to Sjue Aff., ¶ 21, Exh. 2.

18.     In April 2012, EEOC requested additional details regarding its October 26, 2011 request for information including, *inter alia*, a list of CNMCF employees and a list of complaints of discrimination made by CNMCF employees (during the time frame that Mr. Romero was CNMCF Warden), and also asked to interview the following individuals at CNMCF, Heather Gonzales, Joe Garcia, Danny Sedillo, Ben Lujan, Joe Alaniz, Richard Henderson, Manuel Pacheco, and Carlos Valdez.  *See* Exh. M to Sjue Aff., ¶ 22, Exh. 2.  Subsequently, interviews were scheduled for everyone other than Mr. Pacheco and Carlos Valdez.  *See* Exh. N to Sjue Aff., ¶ 22, Exh. 2.

19.     The intake notes/affidavits created by EEOC investigator Stuhlmann from these interviews reflect that EEOC was investigating the allegations of age discrimination and retaliation made by Henderson and Tenorio against Mr. Romero.  *See* Exh. O to Sjue Aff., ¶ 23, Exh. 2.

20.     In May and June 2012, EEOC conducted phone interviews with CNMCF employees, Daniel Sedillo, Carlos Valdez, Larry Phillips, and James Lopez regarding Tenorio and Henderson's allegations.  *See* Exh. P to Sjue Aff., ¶ 24, Exh. 2.

21.     On May 15, 2013, EEOC Investigator Stuhlmann requested the personnel files of Anthony Romero and Henderson.  *See* Exh. R to Sjue Aff., ¶ 27, Exh. 2.

22.     On May 24, 2013, two and half years into investigation of Tenorio and Henderson CODs, EEOC sent a letter to NMCD in which it indicated that it was expanding the Tenorio investigation to include investigating "alleged discrimination against a class of individuals, encompassing the entire State of New Mexico under the Age Discrimination in Employment Act" and requesting a list of all employees *at CNMCF* including birth dates and home addresses and telephone numbers.  *See* Exh. Q to Sjue Aff., ¶ 25, Exh. 2.

23.     The NMCD EEO Officer communicating with EEOC Investigator Stuhlmann understood this letter to indicate that, in addition to investigating the allegations of Tenorio and Henderson against Anthony Romero at CNMCF, the EEOC was opening up an investigation into *all* other New Mexico state agencies (not just the NMCD).  *See* Deposition of Alisson Safir Sjue, 21:9 – 22:12, 39:22 – 40:8 ("Sjue Depo."), attached as Exh. 4; Sjue Aff., ¶ 26, Exh. 2.

24.     On June 11, 2013, after nearly three years of investigation, the EEOC requested a list of all NMCD employees from January 1, 2010 to June 2013, including, *inter alia*, names, dates of birth and hire, position, supervisor name, and last known address, email address, and phone number.  *See* Exh. S to Sjue Aff., ¶ 28, Exh. 2.  NMCD provided all requested information in response to an EEOC administrative subpoena.  *See* Exh. T to Sjue Aff., ¶ 28, Exh. 2.

25.     In August 2013, EEOC, for the first time, sent out letters to each NMCD employee included in the June 21, 2013 employee list provided by NMCD soliciting contacts with NMCD

employees for EEOC's investigation who believed they had experienced or witnessed incidents of age discrimination while employed at NMCD.  *See* Exh. U to Sjue Aff., ¶ 29, Exh. 2.

26.     On September 26, 2013, EEOC issued Reasonable Cause Determinations ("RCDs") on the Henderson Charge (No. 543-2010-01360) and Tenorio Charges (Nos. 543-2011-00991 and 39B-2011-00158).  *See* Exh. V to Sjue Aff., ¶ 30, Exh. 2.

27.     EEOC's RCDs on the Tenorio and Henderson Charges made essentially identical boilerplate assertions as to the discrimination allegedly engaged in by NMCD with regard to Messrs. Henderson and Tenorio.  *See id.*

28.     The RCDs' recitation of NMCD's alleged wrongdoing in relation to Tenorio and Henderson, for the first time, advised NMCD of EEOC's assertion that unidentified "other aggrieved individuals" had been discriminated against by NMCD based on their age in the same boilerplate language in which the RCDs described the potential discrimination affecting Tenorio and Henderson.  *See id.*; Yubeta Depo., Exh. 3, 138:8-15.

29.     The only wrongdoer NMCD understood EEOC was looking at in the Tenorio and Henderson charge investigations was Anthony Romero during the time period Mr. Romero was Warden at CNMCF.  *See* Sjue Depo., Exh. 4, 14:4 – 15:9, 15:23 – 16:18; 29:3-20; Sjue Aff., ¶ 33, Exh. 2.

30.     In an e-mail sent to Ms. Sjue (then Safir) on April 16, 2014, the EEOC asserted it had "currently identified" and proposed to conciliate the claims of "a total of sixteen class members," none of whom were "identified" to NMCD.  The EEOC demanded damages totaling approximately $2.159 million "for both identified [to EEOC but not NMCD] class members and an unknown number of *unidentified class members*."  *See* Exh. W to Sjue Aff., ¶ 34, Exh. 2 (emphasis added).

31.     The relevant time period for the claims/claimants referenced by EEOC in the first conciliation email was July 16, 2010 to September 26, 2013.  *See id.*

32.     On May 6, 2014, NMCD requested information from EEOC regarding, *inter alia*: (a) the identities of the "class" members; (b) how the proposed damages demand had been calculated; (c) what NMCD had done to discriminate against the non-charging and wholly unidentified "aggrieved individuals"; and (d) the grounds relied on by the EEOC for its conclusion that any individuals, besides Messrs. Henderson and Tenorio, were somehow "aggrieved" by age discrimination.  *See* Exh. X to Sjue Aff., ¶ 36, Exh. 2; Sjue Depo., Exh. 4, 34:7-24, 35:10-19.

33.     On July 1, 2014, EEOC, for the first time, identified 11 allegedly aggrieved individuals (in addition to Henderson and Tenorio) and asserted that three additional individuals "wished to remain anonymous."  *See* Exh. Y to Sjue Aff., ¶ 37, Exh. 2.

34.     The 11 aggrieved individuals identified in the July 1, 2014 letter included Theodore Gray, Donald Guy, Conrad Romero, Paul Martinez, Larry Phillips, Albert Herrera, Ben Lujan, Marilyn Lujan, Antoinette Gutierrez, Robert Trujillo, and Rich Chilelli.  *See id.*  Prior to its receipt of the letter, NMCD had no notice or knowledge that any of these current or former NMCD employees claimed to have experienced any form of age discrimination.  *See* Sjue Aff., ¶ 38, Exh. 2; Yubeta Depo., Exh. 3, 28:20-24, 38:7-13, 38:21 – 39:12, 93:10 – 94:13, 101:21 – 102:7; Ex. Z to Sjue Aff., ¶ 38, Exh. 2.

35.     The EEOC's July 1, 2014 letter explained that the "unidentified class" consisted of persons who *may have been subjected to discrimination and retaliation* from July 10, 2010 to September 26, 2013 in "correctional facilities statewide."  *See* Exh. Y to Sjue Aff., ¶ 37, Exh. 2. The EEOC also sought $45,000 in damages for each of the unidentified and uninvestigated class members that the EEOC "estimated" it might find if "additional resources were expended."  *See*

*id.* EEOC acknowledged it had neither investigated nor had knowledge of any of the claims/claimants belonging to this hypothetical unknown (to EEOC or the NMCD) group, but believed it might find 11 additional aggrieved whose claims arose during the relevant time period, if it investigated. *See id.*

36.     Prior to the litigation, EEOC never specifically identified the "discriminatory official" referenced in its conciliation communications.   In discovery, EEOC revealed the reference was to Mr. Romero, CNMCF Warden from 2009-2011 and the subject of the Tenorio and Henderson charges.  Yubeta Depo., Exh. 3, 101:15-20; 178:5 – 179:2; *see* EEOC's Fifth Supp. Resp. to Fourth Set of Interrog., Interrog. Nos. 9-10, pp. 15-16, attached as Exh. 5.

37.     On July 14, 2014, the NMCD declined the EEOC's offer of conciliation.  *See* Exh. AA to Sjue Aff., ¶ 40, Exh. 2.

38.     In a letter dated September 26, 2014, the EEOC sent a revised conciliation proposal in which it "recalculated" the back pay for the now 13[2] (including the Charging Parties) identified "aggrieved individuals" and "three individuals who wish to remain anonymous" that made up the "identified class" from $493,368 to $894,621.  *See* Exhs. BB-CC to Sjue Aff., ¶ 41, Exh. 2; Yubeta Depo., Exh. 3, 160:5-23.

39.     In September 2014, the EEOC asserted that, if it had done an investigation it believed it would find and "unidentified class of approximately 11 additional potentially aggrieved individuals" for whom it demanded $615,051.93, and that Mr. Tenorio likely had some $331,259 in additional damages that he was entitled to, plus attorney fees, all for unknown and unexplained reasons.  *Id.*

---

[2] These included Richard Henderson, Robert Tenorio, Richard Chilelli, Theodore Gray, Donald Guy, Albert Herrera, Ben Lujan, Jerry Martinez, Paul Martinez, Jeri Moya, Conrad Romero, Larry Phillips, and Robert Trujillo. Jerry Martinez and Jeri Moya were not identified as aggrieveds in the earlier July 2014 letter.  *Compare* Exh. Y *with* Exh. AA.

40.     The NMCD declined the EEOC's conciliation offer on October 7, 2014.  *See* Exh. V to Sjue Aff., ¶ 43, Exh. DD.

## The Litigation

41.     On September 30, 2015, EEOC filed suit against the NMCD, alleging that "from at least January, 2009 though at least December, 2014," the NMCD has "denied employment opportunities to older workers based on their age, age 40 and over."  Compl. [Doc. 1], ¶ 66; First Amd. Compl. [Doc. 42], ¶ 66.  In its suit, the EEOC alleges particular age discrimination and retaliation by Anthony Romero against Henderson and Tenorio, and, as to unidentified "other aggrieved individuals," that Mr. Romero denied them promotions and made "ageist comments." *See, e.g.,* First Amd. Compl. [Doc. 42], ¶¶ 23-28, 30, 53, 56, 66-75.

42.     On January 11, 2016, in an exhibit to the Joint Status Report, the EEOC identified additional aggrieved individuals who had never been identified to NMCD as part of the "identified" or "unidentified" class either in the RCDs, the conciliation communications or during the investigation.  These included:  Joe Alaniz, Gabriel Martinez, Beatrice Narcisco, and Aubyn Rhoades.[3]  [Doc. 10-1].

43.     On April 5, 2016, EEOC sent out a letter similar to its August 2013 letter, once again soliciting potential age discrimination claimants for the existing litigation.  *See* EEOC Letter to "Current/Former NMCD Employee[s]" (4/05/16), attached as Exh. 6.

44.     On April 28, 2017, as part of the "First Phase Three Disclosures" ordered by the court, EEOC provided the names of 99 additional alleged "aggrieved individuals" ("LIAIs") who EEOC alleged had been discriminated against by unidentified NMCD personnel from 2009 through 2017.  *See* Exh. 1.

---

[3] Although previously identified as an aggrieved, Antoinette Guitierrez was not listed on Exhibit 1 to the Joint Status Report.  *Compare* Exh. Y *with* Doc. 10-1.

45.     Of the newly identified 99 LIAIs for whom EEOC has dated the alleged incident(s) of discrimination, 51 were allegedly discriminated against *after* the September 26, 2013 RCDs issued for Tenorio and Henderson and outside of the relevant time period EEOC advised NMCD of in conciliation.  *See* Exh. 1, pp. 3-5, 7, 9-10, 12-15, 17, 20-21, 23-26, 29-34, 36-43, 45, 47, 50-51-55; Yubeta Depo., Exh. 3, 213:15-22; 214:9-17, 215:5-17.

## III.    ARGUMENT

The Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 ("ADEA") requires that "[b]efore instituting any action under this section, the [EEOC] shall attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion."  29 U.S.C. § 626(b); *see also Mach Mining*, 135 S. Ct. at 1652[4]; *Shikles*, 426 F.3d at 1311 (holding that under the ADEA, EEOC must investigate and conciliate claims prior to bringing suit (citation omitted)).  Further, EEOC is required to *investigate* the Charges filed and any claims and claimants ancillary to the filed charges *before* it issues its RCDs and *before* it engages in conciliation.  *See Shikles*, 426 F.3d at 1311; *see also EEOC v. Original Honeybaked Ham Co. of Ga., Inc.*, 918 F. Supp. 2d 1171, 1177 (D. Colo. 2013) ("[I]t is true that once the EEOC resorts to civil litigation, it can pursue claims of illegal conduct beyond that alleged in the complaining party's original charge *if the additional illegal conduct was discovered during the course of a reasonable investigation of the original charge*." (emphasis added)).

Here, the EEOC failed in its pre-litigation requirements.  The EEOC's initial investigation focused almost exclusively on the initiating charges of two individuals (Henderson and Tenorio),

---

[4] Although *Mach Mining* is a Title VII case, courts have recognized that "[t]he ADEA contains an almost identical statutory conciliation provision to that contained in Title VII" and that *Mach Mining* is therefore applicable in ADEA cases as well.  *EEOC v. Tepro, Inc.*, No. 4:12-cv-75, 2015 WL 12658237, at *2 n.3 (E.D. Tenn. Oct. 21, 2015); *see also EEOC v. Blinded Veterans' Assoc.*, 128 F. Supp. 3d 33, 42 (D.D.C. 2015).

at a single NMCD facility (CNMCF), between 2010-2012, and the alleged discriminatory conduct of then-CNMCF Warden, Anthony Romero.   UMF 2-4, 7, 14-21, 23, 26-27, 29.   After more than one year of Phase I discovery, EEOC now attempts to expand the scope of its claims to *all* NMCD facilities throughout New Mexico to include 116 aggrieved individuals and a large but wholly unspecified group of "discriminators."  UMF 30, 34-36, 38-39, 41-44.   In addition, the period upon which EEOC bases its claims has metamorphosed from the initial discrete period of July 16, 2009 to July 16, 2010 (as stated in Doc. 144-5 at 1), to "July 10, 2010 to September 26, 2013" (as stated in Doc. 144-10 at 3), and now to "January 2009 until at least 2014 and may still be ongoing" (as stated by the EEOC in Doc. 153 at 12).[5]   NMCD had no opportunity to conciliate or compromise the vast majority of this this ever-expanding and amorphous set of disparate treatment claims.

Further, EEOC's claims on behalf of the PLIAs and LIAIs arising *after* the RCDs and *after* the EEOC's conciliation declared relevant time period, should not be allowed to proceed in this litigation.  *See Mach Mining,* 135 S.Ct. at 1653, 1655-56.  The after-occurring claims of the PLIA and LIAIs were neither investigated nor conciliated by EEOC prior to the initiation of litigation in September 2015.   UMF 35, 39, 42, 44-45.

 Similarly, EEOC should be precluded from bringing *any* claims on behalf of the LIAIs as these claims were neither investigated nor conciliated prior to the initiation of the litigation.   The 99 LIAIs were not even identified by name to NMCD until more than 18 months into the litigation.   UMF 44.  Nor, despite NMCD's request, were any of the names of the LIAIs revealed to NMCD in the RCDs or EEOC's conciliation letters or email.  In none of the circumstances detailed above

---

[5] 2017 is not the end date for the EEOC's disparate treatment claims on behalf of any of these 116 individuals as the EEOC insists that it may continue to "investigate" and add to the incidents of discrimination, retaliation, and harassment (and concomitant damages) making up the ever-moving claims of the Complaint's unidentified "other aggrieved individuals" until the day of trial, for all.  *See* EEOC's Memo. in Supp. of Mot. for Part. Summ. J. [Doc. 220-1], p. 22 ("[T]he aggrieved individuals who participate in this case reasonably expect to obtain full relief, up to the date the case is settled or tried.").

did NMCD have any opportunity to address or remedy alleged discrimination prior to litigation. UMF 30-35, 38-39.  For these reasons, summary judgment is proper.

> **A.**     **The EEOC failed to conduct any investigation of the PLIAs not identified until the Joint Status Report and all of the LIAIs.**

"[T]he EEOC must satisfy the condition precedent that there was an investigation prior to filing suit"[6] on the claims of both charging and non-charging aggrieved individuals. *EEOC v. Grane Healthcare Co.,* No. 3:10-250, 2013 WL 1102880, at *4 (W.D. Pa. Mar. 15, 2013).  While courts generally apply a deferential standard of review in assessing whether the EEOC has satisfied its pre-litigation investigatory burden, there is "a clear and important distinction between facts gathered during the scope of an investigation and facts gathered during the discovery phase of an already-filed lawsuit."  *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 675 (8th Cir. 2012) (internal quotation marks and citations omitted); *EEOC v. Dillard's Inc.*, No. 08-CV-1780-IEG, 2011 WL 2784516, at *6 (S.D. Cal. Jul. 14, 2011) ("The EEOC may seek relief on behalf of individuals beyond the charging parties and for alleged wrongdoing beyond those originally charged; however, the EEOC must discover such individuals and wrongdoing during the course of its investigation.").   Courts must look to whether EEOC's pre-suit efforts—including the investigation—informed the employer of the claims EEOC wanted to conciliate or eventually litigate.  *Mach Mining,* 135 S.Ct. at 1653, 1655-56.  Accordingly, this Court may—and should— consider the scope of EEOC's pre-litigation investigatory efforts in determining whether EEOC fulfilled the mandatory pre-conditions to its pursuit of the claims of the 18 PLIAs and the 99 LIAs. *See CRST*, 679 F.3d at 675 ("Where the scope of its pre-litigation efforts are limited—in terms of

---

[6] The EEOC has previously maintained that it is not required to investigate ADEA allegations prior to filing suit [Doc. 226, p. 8]; however, the Tenth Circuit has rejected such an argument.  *See Shikles*, 426 F.3d at 1311.

geography, number of claimants, or nature of claims—the EEOC may not use discovery in the resulting lawsuit 'as a fishing expedition' to uncover more violations." (citations omitted)).

In *CRST*, the Eighth Circuit Court of Appeals affirmed the district court's grant of the defendant's motion for summary judgment as to the EEOC's claims on behalf of 67 aggrieved individuals "after concluding that the EEOC failed to conduct a reasonable investigation and bona fide conciliation of [their] claims." *Id.* at 671. The court observed that EEOC did not investigate the allegations of any of the 67 aggrieveds until *after* the complaint was filed where EEOC did not interview witnesses or subpoena documents to determine whether any of the aggrieveds' allegations were true. *Id.* Additionally, EEOC did not identify any of the 67 aggrieveds as members of a "class" until after it filed the Complaint. *Id.* Finally, at the time EEOC issued its RCD, 27 of the 67 aggrieveds had not yet been sexually harassed, and although some aggrieveds alleged that they were sexually harassed before EEOC issued the RCD, EEOC admitted that it was not aware of their allegations until *after* it filed the complaint. *Id.* Instead, EEOC improperly used discovery in the lawsuit to find the additional aggrieveds. *Id.* at 673-74. The court held that while "EEOC may seek relief on behalf of individuals beyond the charging parties and for alleged wrongdoing beyond those originally charged, it must discover such individuals and wrongdoing *during the course of its investigation*." *Id.* at 674 (emphasis in original and internal quotation marks and citation omitted). Based on the foregoing, the Eighth Circuit concluded that EEOC "did not reasonably investigate the class allegations" during the investigation of the initial charge, and that it instead improperly "engaged in fact-gathering as to the 'class' during the discovery phase of an already-filed lawsuit." *Id.* at 676 (internal quotation marks and citation omitted).

As a matter of law, the scope of the EEOC's pre-litigation investigation define the permissible contours of its lawsuit. *EEOC v. Reichhold Chems., Inc.*, 700 F. Supp. 524, 526 (N.D.

Fla. 1988) ("The permissible scope of a complaint [is] defined by the *scope of the EEOC investigation*, as long as that investigation reasonably grew out of the discrimination charge." (emphasis added and citation omitted)). For example, in *EEOC v. Jillian's of Indianapolis, IN, Inc.*, 279 F. Supp. 2d 974, 976 (S.D. Ind. 2003), the Court granted the defendant's motion for summary judgment with respect to EEOC's *nationwide* pattern or practice claim because the nationwide claim exceeded the scope of EEOC's prelitigation investigation. In that case, four charging parties alleged that the defendant had discriminated against them based on their gender. *Id.* EEOC's investigation was conducted entirely with respect to the defendant's location in Indianapolis. *Id.* While EEOC initially issued RCDs that were limited to the charging parties, it subsequently issued an Amended RCD with a finding that applied to a nationwide class of aggrieved individuals. *Id.* at 976-77. Thereafter, EEOC filed a lawsuit on behalf of the named individual charging parties and a nationwide "class" of "similarly situated males." *Id.* at 977. The district court held that EEOC could not maintain its suit on behalf of a nationwide class because it had not conducted a nationwide investigation where, *inter alia*, (1) the EEOC only requested personnel files at one location and never sought information about employees at other locations; and (2) the EEOC only conducted interviews of employees of the one location. *Id.* at 981. According to the court, because "the EEOC's allegation of a nationwide class in its Amended Complaint did not reasonably grow out of its investigation," it was precluded from bringing claims on behalf of a nationwide class. *Id.* at 982.

Here, as in *CRST*, *Jillian's*, and related cases, the EEOC's lawsuit exceeds the scope of its investigation in the following manner and claims falling into these categories may not proceed: (1) claims arising at facilities other than CNMCF; (2) PLIA claims arising after the RCDs (September 2013); and (3) the claims of all LIAIs.

**i.**     ***All PLIA and LIAI Claims arising at NMCD facilities other than CNMCF***

Here, the undisputed record demonstrates that the EEOC's investigation was focused on Mr. Romero and the adult correctional facility in Los Lunas, CNMCF, and exclusively concerned the allegations in the Tenorio and Henderson charges. UMF 2-4, 7, 11-12, 14-23, 26-29. With five exceptions, *all* of the persons interviewed as potential claimants by EEOC prior to the issuance of the RCDs and prior to the conciliation, *worked at one NMCD facility, CNMCF*. UMF 15-16, 18, 20. The only alleged "discriminator" identified in the Tenorio and Henderson charges or in EEOC's conciliation communications was then-CNMCF Warden Romero. UMF 26-29, 36. Prior to the August 2013 solicitation letter transmitted to NMCD employees within a month of the Tenorio and Henderson RCDs, the NMCD had no reason to believe the scope of the investigation extended to claimants other than Tenorio and Henderson, that EEOC might be looking into "discriminators" other than Mr. Romero while Warden of CNMCF (2009-2011), or that any other facilities besides CNMCF were being investigated. UMF 26-29, 36.

Courts appropriately limit EEOC's claims where they exceed the scope of the pre-litigation investigation in scenarios similar to those as outlined above. *See, e.g.*, *EEOC v. American Samoa Gov't*, No. 11-00525 JMS/RLP, 2012 WL 4758115, at *8-9 (D. Haw. Oct. 5, 2012) (concluding that where the EEOC's investigation focused on one governmental department, it could not assert claims against the entire government); *Dillard's Inc.*, 2011 WL 2784516, at *8-9 (holding that where "EEOC's investigation focused entirely on Dillard's El Centro store," claims involving employees at other stores must be dismissed); *see also Jillian's*, 279 F. Supp.2d at 980. Here, because the scope of the EEOC's investigation was limited to the CNMCF facility, the EEOC should be precluded from bringing suit on behalf of aggrieved individuals who alleged discriminatory acts at facilities other than CNMCF.

### ii.       *PLIA claims not investigated prior to litigation and/or arising after the investigation concluded*

It is axiomatic that "[o]nce litigation begins, the pre-litigation investigation and conciliation phase is concluded." *Honeybaked Ham*, 918 F. Supp. 2d at 1176. In this case, EEOC acknowledges that their pre-litigation investigation was concluded once conciliation began in April 2014 and that the claims asserted arose between 2009-2013. UMF 35, 45; Doc. 144-5 at 1; Doc. 144-10 at 5. Here, as in *CRST*, the EEOC did not actually investigate the allegations of *any* of the non-charging PLIAs until after the Complaint was filed. *CRST*, 679 F.3d at 671. The EEOC's own investigation documents reveal that outside one or two brief contacts with EEOC investigator Stuhlmann at the tail end of the three-year investigation, generally by phone in response to the August 2013 solicitation letter, the EEOC made no attempts to determine the veracity of the vague assertions made by the non-charging PLIA and did *nothing* in the way of asking for documents or otherwise to verify whether any noncharging PLIA's anecdotes supported a claim of by age discrimination. UMF 34, 38; *see, e.g.*, *CRST*, 679 F.3d at 671. Moreover, while EEOC purports to be suing on behalf of PLIAs for events of alleged age discrimination that occurred long after the RCDs were issued and long after the investigation was completed, these events were not and could not be investigated by EEOC as the purported discrimination had not yet occurred and could not, therefore, have been investigated. *See* Doc. 153 at 12; Doc. 220-1 at 22.

Here, *CRST* is directly on point. In that case, the court observed that at the time EEOC *issued its RCD*, 27 allegedly aggrieved individuals had not yet been sexually harassed. *Id.* at 673. EEOC's attempt to include in the litigation claims that had not arisen at the time of the RCD prompted the *CRST* court to chastise the EEOC for failing to "reasonably investigate the class allegations of sexual harassment during a reasonable [pre-litigation] investigation of the charge." *Id.* (internal quotation marks and citation omitted). Dismissal of the EEOC's claim on behalf of

aggrieved individuals only discovered by EEOC during the litigation, including those whose claims had not yet arisen prior to the issuance of the RCD, was therefore proper.  *Id.* at 677.

Here, as in *CRST*, the PLIAs' age-based discrimination and retaliation allegations that were not investigation pre-litigation and/or did not arise until *after* the EEOC's prelitigation investigation concluded cannot survive summary judgment as the EEOC clearly did not satisfy its pre-litigation burden of investigating and conciliating such claims.

### iii.      *The claims of all LIAIs not investigated and arising from events occurring after the RCDs.*

While many of the promotional or other events of alleged discrimination set out in the meager Phase Three Initial Disclosures regarding the LIAI provided to NMCD on April 28, 2017 are undated, *see* Exh. 1, pp. 2, 7, 10-11, 14, 18, 22, 27-28, 37-39, 43-48, 51, 54, 56, the Initial Disclosures indicate that some of the claims/claims first identified by EEOC are alleged to have arisen out of events occurring during the EEOC's pre-litigation investigation.  *See id.*, pp. 3-7, 10, 12-19, 21-31, 33-36, 39-45, 47-50, 53-54.  EEOC apparently did not investigate these asserted claims at all during the two to three-month time period prior to the RCDs when it looked, for the first time, at "other aggrieveds."  UMF 34, 38.  Further, of the newly identified 99 LIAIs for whom EEOC has dated the alleged incident(s) of discrimination, 51 were allegedly discriminated against *after* the RCDs for Tenorio and Henderson and/or *after* EEOC investigator Stuhlmann stopped investigating age discrimination allegations against the NMCD.  UMF 45.

The Initial Disclosures on the 99 LIAIs demonstrate a failure to investigate, even during litigation or to provide any sort of reasonable notice of the claims to the NMCD prior to (or during) the litigation.  While EEOC had more than one year of Phase I discovery to "discover" new claims and claimants, EEOC never requested any documents from NMCD that might verify the employee responses to the April 5, 2016 solicitation.  UMF 34; *see, e.g.*, *CRST*, 679 F.3d at 671.  As

evidenced by the Initial Disclosures, EEOC lacks even the most basic information about the grievances of approximately 37 of the LIAIs including, date(s) the alleged discriminatory conduct took place, the facility or facilities where the alleged discriminatory act took place, the discriminatory act or acts that allegedly occurred, and who engaged in each act of discrimination. *See generally* Exh. 1.

There can be no dispute that the claims of the 99 LIAIs were not investigated, noticed to NMCD, or conciliated prior to the litigation, thereby failing all of the mandatory pre-litigation requirements. Obviously, NMCD had no pre-litigation opportunity to "remedy" the alleged discrimination it was only advised of in the barest conclusory terms more than 18 months after the litigation began. *EEOC v. Thomas Dodge Corp. of N.Y.*, 524 F. Supp. 2d 227, 236-37 (E.D.N.Y. 2007) ("The additional practices and/or victims must have been ascertained in the course of *a reasonable investigation* of the charging party's complaint and the EEOC must have provided adequate notice to the defendant-employer of the nature of such charges to allow resolution of the charges through conciliation." (emphasis added)).

For these reasons, The EEOC should be precluded from pursuing all claims on behalf of PLIAs and LIAs that neither arose nor were investigated prior to the RCDs or prior to litigation.

B.     **The EEOC failed to meet its statutory obligation to conciliate the claims it now seeks to litigate.**

Pre-litigation conciliation of claims previously made the subject of an EEOC investigation and RCD is a requirement that embodies "the congressional intent that enforcement by EEOC of the discrimination laws be effected, wherever possible, without resorting to formal litigation." *Marshall v. Sun Oil Co.*, 592 F.2d 563, 565 (10th Cir. 1979). The ADEA requires the EEOC to

conduct conciliation prior to filing suit.  29 U.S.C. § 626(b).  As part of its pre-litigation efforts, the agency must make a "sincere and reasonable effort to negotiate by providing the defendant an adequate opportunity to respond to all charges and negotiate possible settlements."  *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1169 (10th Cir. 1985).  NMCD could not negotiate a possible settlement because it had no reasonable opportunity to respond to "all charges" the EEOC now purports to litigate in this case.  Beyond that, EEOC purposefully or otherwise, mislead the NMCD as to what the claims investigated and being conciliated were.

"[T]he purpose of conciliation is to provide the defendant with an opportunity to confront all the issues."  *EEOC v. Swissport Fueling, Inc.*, 916 F. Supp. 2d 1005, 1037 (D. Ariz. 2013) (internal quotation marks and citation omitted).  As recognized by the Eighth Circuit, "[t]he relatedness of the initial charge, the EEOC's investigation and conciliation efforts, and the allegations in the complaint is necessary to provide the defendant-employer *adequate notice* of the charges against it and a genuine opportunity to resolve all charges through conciliation."  *CRST*, 679 F.3d at 675 (emphasis added).  "Absent an investigation and reasonable cause determination apprising the employer of the charges lodged against it, the employer has no meaningful opportunity to conciliate."  *Id.* at 676.  Although the Supreme Court has indicated that judicial review of the EEOC's conciliation efforts is limited, courts are empowered to engage in the factfinding necessary for a sufficiency review where an employer "provides credible evidence . . . that the EEOC did not provide the requisite information[7] about the charge(s) or attempt to engage in a discussion about conciliating the claim(s)."  *Mach Mining*, 135 S.Ct. at 1656.  In this case, the

---

[7] The "requisite information" includes information regarding aggrieved individuals or class of aggrieved individuals (including class size), the acts of discrimination at issue, where the discrimination is occurring, and the alleged discriminators.  *See, e.g.*, *CRST*, 679 F.3d at 676; *EEOC v. GNLV Corp.*, 2015 WL 3467092, at *7-8 (D. Nev. Jun. 1, 2015); *Honeybaked Ham*, 918 F. Supp. 2d at 1179-80; *Thomas Dodge*, 524 F. Supp. 2d at 236-37.

EEOC did not initiate or engage in a pre-litigation process that would pass muster under *Mach Mining* or numerous other cases addressing the requirements for this administrative prerequisite. Rather, as it has done throughout the investigation and litigation discovery process, EEOC chose a "hide the ball"[8] strategy.

In *Swissport*, 916 F. Supp. 2d at 1013, EEOC alleged that the defendant had subjected African employees to "illegal and discriminatory treatment in the workplace."  During its three-year pre-litigation investigation, "the EEOC possessed the identities and contact information for all potential class members in this suit"; however, the EEOC did not disclose to the defendant "the identities of all the claimants on whose behalf it sought relief, and in some cases did not even contact them, until after it brought suit."  *Id.* at 1014.   In its lawsuit, the EEOC sought relief on behalf of 21 claimants who were not identified prior to filing suit as well as 18 charging parties. *Id.* at 1014-15, 1037. The *SwissPort* court rejected the EEOC's assertions that it had appropriately conciliated the claims of the 20-plus claimants only identified after filing suit on the following grounds:  (1) EEOC failed to "justify why it should be allowed to bring claims on behalf of twenty-one individuals when it notified [Defendant] of a class consisting of only nine members"; (2) although EEOC was seeking individualized relief (i.e., back pay) in the conciliation for unidentified noncharging persons, it failed to provide the type of individualized information (identity, allegations, basis for damages) required to obtain such relief; (3) EEOC refused to provide Swissport with the requisite information on the noncharging individuals' claims for which it sought compensatory damages that would have afforded enough notice to Swissport to meaningfully participate in the conciliation process; and (4) Swissport did not have adequate notice

---

[8] More accurately, EEOC has been "hiding" the fact that there is no ball, that they did nothing to verify any phoned in claims of noncharging PLIAs and continued to solicit and assert claims with no inquiry as to specifics, credibility, or other validating factors even in in Phase I discovery after litigation had commenced.

of, or a fair opportunity to conciliate, the claims of noncharging aggrieved individuals that EEOC itself was not aware of until after litigation began. *Id.* at 1038-39. According to the court, these factors led to a "constant shifting of the numbers and identities of claimants," which foreclosed Swissport's "opportunity to confront all the issues against it" during conciliation, thereby preventing it from having any opportunity to remedy the claimed discrimination prior to being forced to engage in litigation. *Id.* at 1039 (internal quotation marks and citation omitted). Because EEOC failed to provide sufficient information to the employer, the court granted summary judgment as to the claims of *all aggrieved individuals not identified to the employer by the EEOC prior to filing suit. Id.* at 1040.

In *Honeybaked Ham*, 918 F. Supp. 2d at 1180, the court partially granted a motion to dismiss on the grounds that EEOC had only "investigated, disclosed and attempted to conciliate" claims of disparate treatment sex discrimination and retaliation as to specific claimants based on the conduct of *one* supervisor at *one* location. EEOC later improperly expanded the scope of its allegations in its complaint to include multiple locations and supervisors and additional claimants. *Id.* The court held that prior to filing its complaint, EEOC provided the defendant notice of only nine aggrieved individuals who worked at the *same location* identified prelitigation under the *same alleged perpetrator* and accordingly dismissed all other potentially aggrieved individuals. *Id.* The court observed that although EEOC is not required to specifically identify all aggrieved individuals as part of its pre-litigation conciliation obligation, it must provide sufficient notice to the employer of the "*nature, extent, location, time period, and persons involved in the alleged unlawful conduct,*" so that the employer "may be able to reasonably estimate the number and identities of persons who may have been impacted" and thereby have a fair opportunity to negotiate a settlement of all claims. *Id.* (emphasis added). For these reasons, the court held that the EEOC's

claims must be limited to the supervisor and location previously identified and that EEOC could

not expand its lawsuit to allege unconciliated claims regarding other locations or supervisors.  *Id.*

In *CRST*, the court expressly rejected the same type of litigation strategy pursued by EEOC

in this case as demonstrative of its failure to properly conciliate claims prior to filing suit:

> On May 29, 2008 [after the litigation commenced], for example, the
> EEOC sent 2,000 letters to former CRST female employees to
> solicit their participation in this lawsuit.  On September 28, 2008,
> the EEOC sent another 730 solicitation letters to former CRST
> female employees. There was a clear and present danger that this
> case would drag on for years as the EEOC conducted wide-ranging
> discovery and continued to identify allegedly aggrieved persons.
> The EEOC's litigation strategy was untenable:  CRST faced a
> continuously moving target of allegedly aggrieved persons, the risk
> of never-ending discovery and indefinite continuance of trial[.] The
> number of purported class members continuously changed
> throughout the discovery process. . . . Absent an investigation and
> reasonable cause determination apprising the employer of the
> charges lodged against it, the employer has no meaningful
> opportunity to conciliate.

679 F.3d at 657 (internal quotation marks and citation omitted).

In this case, EEOC's conciliation efforts did not afford NMCD with the basic information

from which it could determine what was being conciliated.  The RCDs provided no information

about the specifics of any events of age discrimination alleged to have injured any non-charging

aggrieved and neither identified nor enumerated potential claimants.  UMF 26-29.  In EEOC's first

foray into conciliation, an April 2014 email, EEOC demanded that NMCD pay $493,368 in "back

pay" and $1,150,000 in compensatory damages for an entirely unidentified[9] and unenumerated

group of "class members."  UMF 30.  The EEOC provided no further information about the basis

for any identified or unidentified aggrieveds' claims other than a generic laundry list of possible

---

[9] This, despite the fact that the members of the "identified class" for whom these damages were sought were known
to the EEOC.  UMF 33-34.

employment discrimination violations recited in the RCDs.  *Id.*  Although the email limited the relevant time period for claims/claimants being conciliated from July 16, 2010 to September 26, 2013, it provided no additional details about the claims it was attempting to conciliate.  UMF 31. On July 1, 2014, EEOC identified 11 aggrieved individuals in additional to Messrs. Henderson and Tenorio.  UMF 33-34.  However, the EEOC provided no information as to what the alleged discrimination against any of the 11 aggrieveds consisted of or when or how it had occurred (except to limit the claims from July 10, 2010 to September 26, 2013).  The EEOC identified only former-Warden Romero as "the discriminatory official in this case," UMF 29, 36, thereby misleading NMCD as to what claims it was conciliating by persons not identified or described, by time period for claim accrual, and by alleged wrongdoer.[10]  *See, e.g., CRST*, 679 F.3d at 677; *Swissport*, 916 F. Supp. 2d at 1038-39; *Honeybaked Ham*, 918 F. Supp. 2d at 1180; *EEOC v. Bloomberg*, 967 F. Supp. 2d 802, 807 (S.D.N.Y. 2013).  Finally, in September 2014, without providing any of the information requested or correcting any of the misleading information it had provided as to time period, discriminator, or location, EEOC renewed its conciliation with a new higher demand with no explanation other than EEOC had neglected to double the compensatory or back pay damages demanded due to the NMCD's (completely undescribed) "willfulness."  UMF 38.

In the pre-litigation process, EEOC was unable or unwilling to provide the NMCD with any notice of the "nature, extent, location, time period, and persons involved" for its disparate treatment claims on behalf of any noncharging aggrieved.  *Honeybaked Ham*, 918 F. Supp. 2d at 1180.  Instead, the EEOC's investigatory efforts, RCDs, and conciliation communications provided generic, conclusory, and misleading allegations about its claims on behalf of the PLIAs

---

[10] EEOC's discovery responses do not identify Mr. Romero as the "discriminator" for the vast majority of the PLIA or the LIAI.  In fact, eighteen months into this litigation, the EEOC is still unable to identify the names of the asserted discriminators for most of the PLIA.

and never mentioned the vast majority of the claims it planned to bring in the litigation.  NMCD could not reasonably be expected to have understood the "nature, extent, location, time period, and persons involved in the alleged unlawful conduct" that would define the scope of potential claims/claimants in subsequent litigation from EEOC's unelucidated monetary demands. *Id*. Conciliation cannot take place under the circumstances described herein.  The absence of pre-litigation specificity, coupled with EEOC's moving target strategy, should be fatal to the EEOC's attempt to bring the following claims:  (1) EEOC's disparate treatment claims on behalf of claimants identified to NMCD prior to the litigation that arose after the EEOC's investigation and conciliation of the Robert Tenorio and Richard Henderson administrative charges; (2) EEOC's disparate treatment claims on behalf of all individuals "discovered" by EEOC after its Reasonable Cause Determinations on the Tenorio and Henderson charges, after the conciliation of those charges, and after the litigation commenced; and (3) EEOC's disparate treatment claims on behalf of all claimants that arose at NMCD facilities other than CNMCF.  *See id.*; *see also CRST*, 679 F.3d at 677; *Swissport*, 916 F. Supp. 2d at 1038-39; *Bloomberg*, 967 F. Supp. 2d at 807.  Because the EEOC failed to fulfill its pre-litigation conciliation responsibilities, summary judgment is proper.

## IV.   CONCLUSION

For the foregoing reasons, the NMCD respectfully requests that this Court grant its motion for summary judgment on the EEOC's claims and claimants described herein.

Respectfully Submitted By:

**HINKLE SHANOR LLP**

<u>/s/ Ellen S. Casey</u>
Ellen S. Casey
Jaclyn M. McLean
Jaime R. Kennedy
P.O. Box 2068
Santa Fe, NM 87504-2068
Tel: 505-982-4554
Fax: 505-982-8623
ecasey@hinklelawfirm.com
jmclean@hinklelawfirm.com
jkennedy@hinklelawfirm.com

Chelsea R. Green
Post Office Box 10
Roswell, NM  88202-0010
Tel:     575-622-6510
Fax:     575-623-9332
cgreen@hinklelawfirm.com

*Attorneys for Defendant State of New Mexico*
*Corrections Department*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of August, 2017, I caused a true and correct copy of the foregoing *New Mexico Corrections Department's Motion and Memorandum in Support of Motion for Partial Summary Judgment*, along with a copy of this Certificate of Service, to be filed electronically through the CM/ECF system.  Notice of this filing will be sent to counsel of record for all parties by operation of the Court's Electronic Filing System.

Loretta Medina
Equal Employment Opportunity Commission
Albuquerque Area Office
505 Marquette NW, Suite 900
Albuquerque, NM 87102
(505) 248-5230
loretta.medina@eeoc.gov

Michael Baskind
Gina E. Carrillo
Wasan A. Awad
U.S. Equal Employment Opportunity Commission
Phoenix District Office
3300 Central Ave., Suite 690
Phoenix, Arizona 85012
(602) 640-5003
michael.baskind@eeoc.gov
gina.carrillo@eeoc.gov
wasan.awad@eeoc.gov
*Counsel for Plaintiff*

*/s/ Ellen S. Casey*
Ellen S. Casey