IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

    Plaintiff,

vs.                                                                                                       Civ. No. 15-879 KG/KK

STATE OF NEW MEXICO,
DEPARTMENT OF CORRECTIONS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon the parties' Cross Motions for Partial Summary Judgment (Cross Motions), filed on May 30, 2017, and August 31, 2017. (Docs. 220, 270). Each party filed responses and replies, and the matters are now fully briefed. (Docs. 271, 318, 319, and 345). The Cross Motions address whether EEOC satisfied its prerequisites to suit. Having considered the relevant law, briefs, and uncontested evidence, the Court will grant partial summary judgment in favor of EEOC.

*A. Background and Uncontested Facts[1]*

This is an Equal Employment Opportunity Commission (EEOC) enforcement action. It arises from the New Mexico Department of Corrections' (NMDC) alleged failure to promote correctional officers over the age of 40. The pre-litigation proceedings began on August 25, 2010, when Richard Henderson filed an EEOC Charge of Discrimination (Charge) against NMDC. (Doc. 144-1) at 1-2. Henderson alleged Warden Anthony Romero overlooked him for a

---

[1] The facts are taken from the uncontested portions of the summary judgment record.

promotion in favor of a 31-year-old candidate based on "longevity." *Id.* (Doc. 270) at 5; (Doc. 319) at 2. At the time, Romero was the Warden of Central New Mexico Correctional Facility (CNMCF). *Id.* Between 2010 and 2013, Robert Tenorio and Paul Martinez also filed age discrimination Charges against NMDC.[2] *Id.*

*II. The EEOC Investigation*

As part of its investigation, EEOC requested:

- Position statements and personnel files relating to Henderson and Tenorio; (Doc. 220-2) at 2; (Doc. 144-5) at 4.

- Information regarding correctional officers who sought promotions to the rank of Lieutenant or above at CNMCF; (Doc. 270) at 6; (Doc. 270-2) at 13.

- A list of all past and current CNMCF employees and supervisors, including the date of hire, current position, and (for former employees) the reason for leaving; (Doc. 270-2) at 23, 26.

- A list of all formal and informal discrimination complaints made by all NMDC employees. (Doc. 270-2) at 4-5.[3]

EEOC also visited CNMCF on May 11, 2011, and May 8, 2012. (Doc. 220-2) at 2; (Doc. 270-2) at 24, 29. Investigator Jeff Stuhlmann interviewed at least 25 employees about the alleged discrimination and retaliation. (Doc. 220-2) at 2.

In mid 2011, Romero was appointed Deputy Warden of Penitentiary of New Mexico (PNM). (Doc. 270) at 4; (Doc. 319) at 2. Romero subsequently[4] was promoted to the Deputy

---

[2] Tenorio filed the Charge on September 24, 2010. (Doc. 270) at 5; (Doc. 319) at 2. Martinez filed the Charge September 12, 2013. *Id.*

[3] At NMDC's request, EEOC initially limited the scope of the requests for information to potential discrimination within CNMCF while Romero was Warden (*i.e.,* May 2009 – June 2011). (Doc. 270-2) at 4-5, 26.

Division Director of NMDC's Adult Prisons Division at the Central Office in Santa Fe. (Doc. 270) at 4; (Doc. 319) at 2; (Doc. 220-2) at 2. As Director, Romero oversaw wardens at all NMDC facilities. (Doc. 220-2) at 3. By a letter dated May 24, 2012, EEOC informed NMDC that it was expanding its investigation to encompass potential age discrimination "against a class of individuals" in "the entire State of New Mexico" (Expansion Letter). (Doc. 270-2) at 40.

Thereafter, EEOC requested a "complete and accurate employee list … of all [NMDC] employees since January 1, 2010," including the employees' name, contact information, date of hire, position, supervisor, and, if applicable, reason for leaving. (Doc. 220-2) at 2; (Doc. 144-5) at 13. On August 1, 2013, EEOC contacted each individual "to find out whether [they] … experienced or witnessed any potential age discrimination while … employed by" NMDC (hereinafter, Solicitation Letter). (Doc. 270-2) at 44. The letter encouraged employees to contact EEOC's investigator if they would like to discuss their work experiences at NMDC. *Id.* Following the investigation, EEOC concluded that age discrimination occurred in at least five NMDC facilities, including CNMCF and PNM. (Doc. 220-2) at 3.

*III. Determination Letters and Conciliation Efforts*

On September 13, 2013, EEOC issued reasonable cause determination letters (RCDs) to NMDC regarding the Henderson and Tenorio Charges. (Doc. 270-2) at 46-49. EEOC "determined that there is reasonable cause to believe that [NMDC] violated the ADEA by discriminating against the Charging Part[ies] and other aggrieved individuals" by:

[1] refusing to hire and/or promote individuals because of their age … [;]

[2] discriminating … with respect to their terms, conditions, or privileges of employment, including … creating and/or fostering a hostile work environment, subjecting individuals

---

[4] Although the exact date of the promotion is unknown, the record reflects it occurred before July 1, 2014. In a letter dated July 1, 2014, EEOC made reference to the fact that the alleged discriminatory official "oversaw all the correctional facilities for DOC." (Doc. 270-2) at 55.

to discipline because of their age, terminating older individuals' employment, and/or by forcing older individuals to resign and/or retire[;] [and]

[3] discriminating … for opposing employment practices made unlawful by the ADEA, including … subjecting the individuals to discipline, refusing to hire and/or promote the individuals, subjecting the individuals to less favorable working conditions, and creating and/or fostering a hostile work environment for individuals who opposed unlawful employment practices.

(Doc. 270-2) at 46-49. The RCDs included an invitation to participate in informal conciliation discussions. (Doc. 270-2) at 47, 49.

EEOC sent NMDC an initial conciliation proposal on April 16, 2014. (Doc. 270-2) at 50. EEOC requested certain policy changes and damages, stating:

> There are a total of 16 class members currently identified (including … Henderson and … Tenorio) and the following damages are for all identified class members and unidentified class members.
> 
> | | |
> |---|---|
> | Compensatory Damages: | $1,150,000 |
> | Backpay: | $493,368 |
> | Attorney Fees: | $16,250 |
> | Unidentified Class: | $500,000 |

(Doc. 270-2) at 50.

NMDC requested clarification on eight issues, including perfected charges of discrimination for each class member and a detailed explanation about damages. (Doc. 270-2) at 51-52. EEOC declined to require individual Charges but provided a break-down of the amount of claimed backpay for each of the 16 identified individuals.[5] (Doc. 270-2) at 53-54. EEOC also defined the "unidentified class" as "other putative class members who may have been subjected to similar actions of discrimination and retaliation from July 16, 2010 to September 26, 2013 in the correctional facilities statewide." (Doc. 270-2) at 55. EEOC estimated it would be able to identify at least 11 additional aggrieved individuals, "since the discriminatory official … oversaw all of the correctional facilities statewide." *Id.*

---

[5] Thirteen class members were identified by name, while three wished to remain anonymous. (Doc. 270-2) at 55.

On July 14, 2014, NMDC declined EEOC's offer to conciliate. (Doc. 270-2) at 70. EEOC sent a revised proposal on September 26, 2014, which contained different estimations regarding damages. (Doc. 270-2) at 72-73. By a letter dated October 7, 2014, NMDC again declined the conciliation offer. (Doc. 270-2) at 132.

*IV. Litigation*

EEOC filed this lawsuit on September 30, 2015, alleging violations Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. Following discovery, EEOC identified 99 additional aggrieved individuals who allegedly experienced discrimination at NMDC between 2009 and 2017. (Doc. 270-1). In some cases, the discrimination occurred after the RCDs were issued on September 26, 2013. (Doc. 270) at 13; (Doc. 319) at 7.

The instant Cross Motions address whether EEOC fulfilled the statutory prerequisites to suit under the ADEA. NMDC argues that EEOC may only bring claims for wrongdoing that was discovered and disclosed during the prelitigation investigation and conciliation period. (Doc. 270). EEOC disagrees and argues it satisfied any duty to investigate or conciliate. (Docs. 220, 319). Resolution of these arguments is determinative of affirmative defenses 1-4 and 8-11. (Doc. 42) at 14-16.

*B. Summary Judgment Standard*

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is 'genuine' if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol–Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). The party moving for summary judgment bears the initial burden of demonstrating—by reference to pleadings, depositions, answers to interrogatories, admissions, or

affidavits—the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When considering cross-motions for summary judgment, the Court is "entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *A. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotations omitted). In addition, the Court "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. S. Ct. of New Mexico*, 839 F.3d 888, 907 (10th Cir. 2016) (internal quotations omitted).

C. Discussion

*I. EEOC's Pre-Litigation Requirements.*

The ADEA prohibits employers from discriminating or retaliating against employees over 40 on the basis of age. 29 U.S.C. §§ 623(a), (d). Section 626 of the ADEA addresses the prerequisites to an EEOC enforcement action. Specifically, "[b]efore instituting any action under this section, the [EEOC] shall attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion." 29 U.S.C. §§ 626(b). EEOC must also promptly notify the employer of a Charge of discrimination, if one is filed. *See* 29 U.S.C. § 626(d)(2); 29 C.F.R. § 1626.11.

The question becomes whether to adopt the requirements set forth in *EEOC v. CRST Van Expedited, Inc.,* 679 F.3d 657, 675 (8th Cir. 2012), and *EEOC v. Original Honeybaked Ham Co. of Georgia, Inc.*, 918 F.Supp.22 1171, 1180 (D. Colo. 2013). The court in *CRST* held that the EEOC may only seek relief on behalf of individuals that were discovered during the course of its

6

pre-suit investigation/conciliation. *Id.* at 675-676. The court in that case reasoned that, absent notice of the facts pertaining to each class member, the employer had no meaningful opportunity to conciliate. *Id.* at 675-676. The *CRST* court also stated that discovery cannot be used "as a fishing expedition to uncover more violations." *Id.* at 676. *Honeybaked Ham* permitted EEOC to discover additional class members during litigation, but limited the scope of the enforcement action to the original wrongdoer and facility identified during the pre-litigation process. *Id.* at 1179-1180. The holding again was predicated on the idea that allowing EEOC to pursue additional wrongdoing would run afoul of Title VII's investigation and conciliation requirements. *Id.* at 1179.

Based on these cases, NMDC urges the Court to dismiss all claims on behalf of claimants that were identified after the September 13, 2013, RCDs,[6] or at the very least, after litigation. NMDC also seeks dismissal of any claims that arose at NMDC facilities other than CNMCF. The Court determines that dismissal is not appropriate for the following three reasons.

First, part of EEOC's "investigative function" includes "discovering other possible victims of the company's" discriminatory practices after the case has commenced. *EEOC v. St. Louis-San Francisco Ry. Co.*, 743 F.2d 739, 744 (10th Cir. 1984); *see also EEOC v. United Parcel Service*, 860 F.2d 372, 374, 376 (10th Cir. 1988) (holding EEOC need not produce injured party to challenge discrimination impacting class of individuals).[7] Indeed, the trial court can be reversed for curtailing this investigative function during discovery. *See St. Louis-San*

---

[6] NMDC uses the September 13, 2013, cutoff date on the theory that the issuance of a reasonable cause determination concludes the EEOC investigation.

[7] Although these are "pattern and practice" cases, the opinions contain broad language that could apply to all EEOC enforcement actions. Moreover, a number of "[c]ourts have permitted the EEOC to add new claimants identified during discovery even when the EEOC is asserting" direct claims for discrimination and retaliation rather than "pattern and practice" claims. *See EEOC v. United Health Programs of America, Inc.,* 213 F.Supp.3d 377, 403-404 (E.D.N.Y. 2016) (collecting cases).

*Francisco Ry. Co*., 743 F.2d at 744 (noting, "[a]t the discovery stage, the EEOC should be allowed to seek proof of the effect on other applicants or on potential applicants"). Therefore, EEOC is not required to discover or identify each class member prior to conciliation or litigation.

Second, inadequate conciliation is not a defense to liability. *See EEOC v. Prudential Fed. Sav. & Loan Assoc*., 763 F.2d 1166, 1169 (10th Cir. 1985) (holding dismissal "would severely hamper enforcement of the ADEA and would be incompatible with the humanitarian nature of the Act"). The only remedy for inadequate conciliation "is to stay proceedings until such informal conciliation can be concluded." *Id.* Even if EEOC were required to identify all alleged wrongdoing, facilities, date ranges, and discriminating officials during conciliation - as *Honeybaked Ham* suggests - the Court could not dismiss any claims solely on that basis. Instead, the Court could stay the suit, which was not requested here.

Third, to the extent the rulings in *CRST* and *Honeybaked Ham* are predicated on an inadequate investigation, dismissal still is not appropriate. Those cases were decided under Title VII, which explicitly requires an investigation before EEOC issues the RCD or files suit. Section 2000e–5(b). In contrast, "EEOC is not formally tasked with investigating … claims" under the ADEA. *Shikles v. Sprint/United Management Co.,* 426 F.3d 1304, 1311 (10th Cir. 2005). An ADEA investigation is only required for conciliation, the actual prerequisite to suit. *See Shikles,* 426 F.3d at 1311 (observing, "EEOC must necessarily investigate in order to engage in conciliation, conference, and persuasion"). Consequently, there is no basis to dismiss claims based on the alleged failure to investigate.[8]

---

[8] This Court also notes that even under Title VII, it is not clear an EEOC investigation is subject to judicial review. *See EEOC v. Caterpillar, Inc.*, 409 F.3d 831, 832 (7th Cir. 2005) (holding courts cannot review scope of EEOC investigation); *EEOC v. Keco Indus., Inc.*, 748 F.2d 1097, 1100 (6th Cir. 1984) (same); *EEOC v. Cal. Psych. Transitions, Inc.*, 725 F.Supp.2d 1100, 1112 (E.D. Cal. 2010) (same, and collecting cases). The Second Circuit has authorized limited judicial involvement, but it held that EEOC may satisfy the investigation requirement by filing an affidavit outlining the steps taken to investigate the

Having found no bright-line rule barring claims under either *CRST* or *Honeybaked Ham,* the Court next considers whether conciliation was adequate under the facts of this case.

*II. Adequacy of Conciliation.*

In *Mach Mining, LLC v. EEOC,* 135 S.Ct. 1645 (2015), the Supreme Court clarified the EEOC's conciliation obligations. In that case, the Court explained that the scope of judicial review is "narrow, reflecting the abundant discretion the law gives the EEOC to decide the kind and extent of discussions appropriate in a given case." *Id.* at 1655. "The appropriate scope of review enforces the … requirement … that the EEOC afford the employer a chance to discuss and rectify a specified discriminatory practice—but goes no further." *Id.* at 1653. The Court described this limited review as "barebones." *Id.* at 1656.

To satisfy the requirement, "EEOC need only 'endeavor' to conciliate a claim" using "whatever 'informal' means of 'conference, conciliation, and persuasion' it deems appropriate." *Id.* at 1654. EEOC does not have "to devote a set amount of time or resources to that project." *Id.* Moreover, "EEOC alone decides whether in the end to make an agreement or resort to litigation[.]" *Id.* Courts may not assess "strategic decisions [such] as whether to make a bare-minimum offer, to lay all its cards on the table, or to respond to … counter-offers." *Id.* EEOC has "discretion over the pace and duration of conciliation efforts, the plasticity or firmness of its negotiating positions, and the content of its demands for relief." *Id.*

Moreover, *Mach Mining* identified two particular requirements. First, EEOC must "inform the employer about the specific allegation[.]" *Id.* at 1655. Such notice should "describe[] both what the employer has done and which employees (or what class of employees)

---

charges. *See EEOC v. Sterling Jewelers Inc.,* 801 F.3d 96, 101 (2nd Cir. 2015). If that standard applied to the ADEA, the evidence here would still satisfy the investigation requirement. EEOC's affidavit reflects it interviewed 25 witnesses about the alleged discrimination at CNMCF. (Doc. 220-2) at 2. Later, EEOC contacted every NMDC employee statewide to determine the scale and impact of the discrimination. (Doc. 270-2) at 44.

have suffered as a result[.]" *Id.* at 1656.  Second, EEOC must "try to engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the allegedly discriminatory practice." *Id*.  "Judicial review of those requirements (and nothing else) ensures that the Commission complies with the statute." *Id*.  "A sworn affidavit from the EEOC stating that it has performed the obligations … but that its efforts have failed will usually suffice to show that it has met the conciliation requirement." *Id.*

Viewing the evidence in a light favorable to NMDC, the Court finds that no genuine issue of fact exists as to whether the EEOC met the conciliation requirements.  Specifically, between 2010 and 2013, EEOC promptly notified NMDC of all Charges.  EEOC also disclosed the specific allegations that Romero denied promotions to workers over the age of 40 and retaliated when they complained.  The document requests were directed at any improper hiring, promotion, or firing decisions, and the RCDs contained more general language about retaliation and age discrimination.  EEOC also sufficiently described the affected class.  NMDC therefore was on notice of the allegations.

Finally, the evidence, including the written conciliation proposals demonstrates that a genuine issue exists as to whether EEOC gave NMDC an opportunity to remedy the allegedly discriminatory practice.  As *Mach Mining* instructs, the Court "looks only to whether the EEOC attempted to confer about a charge, and not to what happened (i.e., statements made or positions taken) during those discussions." 135 S.Ct. at 1656.   Therefore, the Court determines EEOC satisfied the prerequisites to suit under the ADEA.  EEOC is entitled to summary judgment on affirmative defenses one through four, eight, nine, and eleven.

   *III. Statute of Limitations.*

EEOC also seeks summary judgment on NMDC's tenth affirmative defense, which raises the statute of limitations. (Doc. 46) at 16. NMDC responds in part that the "[d]efense focuses on the timeliness of the 'charges' of the" class of other aggrieved individuals. (Doc. 271) at 26. NMDC argues many class members did not file charges within 300 days of the alleged discriminatory actions. *Id.* at 26-27. *See* 29 U.S.C. § 626(d)(1)(B) (requiring employee's ADEA suit to be filed within 300 days of charge).

Unlike the requirements under Title VII, "the right of the [EEOC] to file a civil action under the ADEA is not dependent on the filing of a charge …." 29 CFR § 1626.19; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (holding, "the EEOC's role in combating age discrimination is not dependent on the filing of a charge"). EEOC "may receive information concerning alleged violations of the ADEA 'from any source,' and it has independent authority to investigate age discrimination." *Id.* Therefore, NMDC's tenth affirmative defense fails.[9]

*D. Conclusion*

Having considered all arguments and undisputed evidence, the Court concludes EEOC satisfied the prerequisites to suit under the ADEA. The Court also concludes this enforcement action is not time-barred.

---

[9] Other courts have held there is no statute of limitations on EEOC enforcement actions under the ADEA. *See, e.g.,* Donald R. Livingston, *EEOC Litigation and Charge Resolution*, Ch. 6 VI (BNA 2005) (collecting cases); *EEOC v. Hi-Line Elec. Co.*, 805 F. Supp. 2d 298, 308-309 (N.D. Tex. 2011) (holding limitations period in Section 626(e) does not apply to EEOC); *EEOC v. Timeless Invs., Inc.*, 734 F. Supp. 2d 1035, 1047-1048 (E.D. Cal. 2010) (same); *EEOC v. Incorporated Vill. of Valley Stream*, 535 F. Supp. 2d 323, 325, (E.D.N.Y. 2008) (same); *EEOC v. AT & T Co.*, 36 F.Supp.2d 994, 997 (S.D. Ohio 1998) (finding "no specific statute of limitations with respect to claims brought by the EEOC under the ADEA"); *EEOC v. Sara Lee Corp.*, 923 F. Supp. 994, 999 (W.D. Mich. 1995) (same); *Wilkerson v. Martin Marietta Corp.*, 875 F. Supp. 2d 1456, 1459-1460 (D. Colo. 1995) (noting that ADEA limitations period did not bar EEOC enforcement action on behalf of "class of persons" terminated from employer); *EEOC v. Sidley Austin LLP*, 437 F.3d 695 (7th Cir. 2006) (noting that EEOC can pursue monetary claims under ADEA that would otherwise be time-barred if brought by individuals).

IT THEREFORE IS ORDERED:

1. NMDC's Motion for Partial Summary Judgment (Doc. 270) is denied.

2. EEOC's Motion for Partial Summary Judgment (Doc. 220) is granted.

3. EEOC is entitled to partial summary judgment on NMDC's first, second, third, fourth, eighth, ninth, tenth, and eleventh affirmative defenses.

4. Partial summary judgment will be entered in favor of EEOC on NMDC's first, second, third, fourth, eighth, ninth, tenth, and eleventh affirmative defenses.

_____
UNITED STATES DISTRICT JUDGE